IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02600-CMA-KLM

EUGENE CHRISTENSON, and
SHARON CHRISTENSON,

     Plaintiffs,

v.

CITIMORTGAGE, INC.,

     Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Citimortgage, Inc.'s ("CMI") **Motion to Dismiss Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 23; Filed February 11, 2013] (the "Motion"). On March 4, 2013, Plaintiffs filed a Response [#25] in opposition to the Motion. On March 21, 2012, Defendant filed a Reply [#26]. The Motion is ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.Colo.LCivR 72.1C.(3), the Motion has been referred to this Court for recommendation [#24]. The Court has reviewed the Motion, Plaintiffs' Response, Defendant's Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part and DENIED in part**.

## I. Background

Plaintiffs initiated this action on October 1, 2012. *Compl.* [#1]. Primarily, Plaintiffs

challenge Defendant's attempted foreclosure of their real property located at 1736 Robideau Street, Grand Junction, Colorado (the "Property"). *Am. Compl.* [#20] ¶ 3. Defendant is a mortgage servicer and holds the promissory note and deed of trust securing the mortgage on Plaintiffs' property. *Id.* ¶¶ 2-3. Plaintiffs seek: (1) monetary damages "together with attorneys fees" and "costs herein expended" pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (e) and (f); (2) an injunction and monetary damages regarding Plaintiffs' claim for breach of contract; (3) equitable relief from foreclosure; (4) "attorneys fees and statutory damages of $1,000.000 pursuant to" C.R.S. §§ 38-40-103 and 38-40-104; (5) monetary damages for extreme and outrageous conduct; and (6) "actual damages awarded threefold, statutory damages of $500, and Plaintiff's [sic] attorneys fees plus costs" pursuant to the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, *et seq. Id.* ¶¶ 17-49.

On April 20, 2009, Plaintiffs executed a promissory note (the "Note") with Ascent Home Loans, Inc., in the principal amount of $251,119. *See Def. Ex. A.* [#23-1]. As security for the Note, Plaintiffs executed a deed of trust, dated April 20, 2009 ("Deed of Trust"), which encumbers the Property. *See Def. Ex. B.* [#23-2]. The Note in term 6 deals with a borrower's failure to pay. It states:

> If borrower defaults by failing to pay in full any monthly payment, then lender may, *except as limited by regulations of the Secretary* in case of payment defaults, require immediate payment of the full principal balance remaining due and all accrued interest. Lender may choose to exercise this option without waiving its rights in the event of subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. *This note does not authorize acceleration when not permitted by HUD regulations.* As used in this note, "Secretary" means the Secretary of Housing and Urban Development or his designee.

*Def. Ex. A.* [#23-1] at 3 (emphasis added).[1]  The Deed of Trust in paragraph 9 states:

> 9. (a) Default. Lender may, except as limited by regulation issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:  . . . (then listing various events)
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

*Def. Ex. B.* [#23-2] at 4.  The Department of Housing and Urban Development ("HUD") at all times had in place regulations codified in the Code of Federal Regulations, which have the effect of law.  *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979) ("[P]roperly promulgated, substantive agency regulations have the "force and effect of law."") (citation omitted).  The regulations at issue are as follows:

> a. 24 CFR § 203.500 provides, inter alia, "[I]t is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."
>
> b. 24 CFR § 203.501 provides: "Loss mitigation. Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under §203.357, pre-foreclosure sales under §203.370, partial claims under §203.414, assumptions under §203.512, special forbearance under §§203.471 and 203.614, and recasting of mortgages under §203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions,

---

[1] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider outside documents that are both central to Plaintiffs' claims and to which Plaintiffs refer in their complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Here, the Letter is central to Plaintiffs' RESPA claim, and Plaintiffs quote a long portion of it in the Amended Complaint.  *See Am. Compl.* [#20] ¶ 9.

concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property."

c. 24 CFR § 203.600 provides: Mortgage collection action. Subject to the requirements of this subpart, mortgagees shall take prompt action to collect amounts due from mortgagors to minimize the number of accounts in a delinquent or default status. Collection techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor.

d. 24 CFR § 203.605 provides: Loss mitigation performance. (a) Duty to mitigate. Before four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques provided at §203.501 to determine which is appropriate. Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action. Documentation must be maintained for the initial and all subsequent evaluations and resulting loss mitigation actions. Should a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain this documentation in the claim review file under the requirements of §203.365©).

e. 24 CFR § 203.606 Pre-foreclosure review. (a) Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met. The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default.

*Am. Compl.* [#20] ¶ 8.[2]   Plaintiffs allege that these regulations (together, the "HUD Regulations") were incorporated into the contract between Plaintiffs and Defendant by the foregoing contract language of the Deed of Trust.   *Id.* ¶ 7.   Plaintiffs concede they are in default under the Note and Deed of Trust for failing to timely make the required monthly payments.   *Id.* ¶ 6.   However, Plaintiffs allege that when they fell behind on payments, they

---

[2]  The Regulations cited by Plaintiffs are current and accurate.

contacted Defendant and its legal counsel numerous times attempting to get Defendant to engage in loss mitigation as contemplated in the Deed of Trust. *Id.* ¶ 9. They allege that Defendant refused to cooperate, and that Defendant "accelerated the balance . . . instituted foreclosure and hired attorneys to effectuate a trustee sale under the [D]eed of [T]rust under Colorado's expedited non-judicial foreclosure process." *Id.*

On March 31, 2011, Plaintiffs sent a letter to Defendant. *See Def. Ex. C* ("The Letter") [#23-3]. In this letter, Plaintiffs requested information relating to Defendant's "loss mitigation activities." *Id.* at 1-2. Defendant made no reply. *Am. Compl.* [#20] ¶ 20. On June 28, 2011, Plaintiffs filed for Chapter 13 bankruptcy, and foreclosure proceedings stopped pursuant to the automatic bankruptcy stay. *Id.* ¶ 12; *see Def. Ex. D.* [#23-4]. According to Plaintiffs, the Chapter 13 plan was not a modification of Plaintiffs' contract with Defendant, but simply forced Defendant to involuntarily stop the progress of the foreclosure. *Id.* Plaintiffs allege that Defendant objected to Plaintiffs' original Chapter 13 plan on the grounds that the proposed plan attempted to "modify the Creditor's rights pursuant to the terms of the [N]ote and [D]eed of [T]rust." *Id.* Based upon Defendant's objections, Plaintiffs allege that they proposed a plan that did not modify these obligations. *Id.* Plaintiffs' Amended Chapter 13 Plan (the "Plan"), which requires Plaintiffs to pay Defendant $1595.00 per month for 42 months for arrearages, was confirmed on November 4, 2011. *See Def. Ex. E* (the Plan) [#23-5] at p. 3; *see also Def. Ex. F* (Order confirming Plan) [#23-6].

Plaintiffs assert that this Court has jurisdiction over their RESPA claim pursuant to 12 U.S.C. § 2605 (e) and (f), and that the Court has supplementary jurisdiction over the state claims pursuant to 28 U.S.C. § 1361. Plaintiffs alternatively assert that the Court has

diversity jurisdiction over the claims pursuant to 28 U.S.C. § 1332, as Plaintiffs are both citizens of the State of Colorado, Defendant is a corporation incorporated in the State of New York with its principal place of business in Missouri, and the matter in controversy exceeds $75,000.00. *Am. Compl.* [#20] ¶ 1.  Defendant does not contest jurisdiction.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted.").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a

-6-

formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Federal Rule of Civil Procedure 8(a). *Iqbal*, 556 U.S. at 679 (quotation marks and citation omitted).

## III. Analysis

### A.    Subject Matter Jurisdiction: Existence of a Current Controversy

Defendant alleges that because Plaintiffs' loan has been modified by the Plan and there is no active foreclosure pending, Plaintiffs' Second, Third, and Sixth claims, those based on Defendant's alleged violation of the HUD Regulations, are moot. *Motion* [#20] at 9. "By seeking dismissal on the basis of mootness, Defendant[ ] request[s] a ruling on whether the Court has subject matter jurisdiction over this action." *Atkins v. Fed. Bureau of Prisons*, No. 11-cv-03252-CMA-KLM, 2013 WL 438693, at *4 (D. Colo. Jan. 15, 2013). The Court will therefore discuss this argument first. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

To have standing for these claims, Plaintiffs must have experienced, or be facing, an actual injury that is both (1) traceable to Defendant and (2) redressable by the Court.

-7-

*Allen v. Wright*, 468 U.S. 737, 750-51 (1984).  On the other hand, a case becomes moot

"when it is 'impossible for the court to grant any effectual relief whatever to a prevailing

party.'"  *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir. 2001) (quoting

*Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).  The Court will not dismiss

a case as moot if: "(1) secondary or 'collateral' injuries survive after resolution of the

primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review;

(3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at

any time; or (4) it is a properly certified class action suit."  *Riley v. INS*, 310 F.3d 1253,

1257 (10th Cir. 2002) (citations omitted).

Plaintiffs have pled the following:

14.   Under the Colorado modified non-judicial foreclosure scheme, the trustee is required to continue foreclosure sales from week to week pending the dismissal of the foreclosure. *The foreclosure filed by Defendant remains pending in Mesa County and Defendant is poised to foreclose in the event Plaintiffs' bankruptcy is dismissed or if they miss payments on the mortgage by attempting to keep up with the large bankruptcy payments.*

15. But for the stay, Defendant would foreclose within a week to two weeks. Defendant plays a "numbers game" with borrowers in bankruptcy. Because the bankruptcy repayment plans are so difficult to sustain, Defendant waits for large numbers of borrowers to default then immediately sells the property. As such *Defendant's practices make the threat of Plaintiffs losing their home in a very short time a clear and present danger* because their account was not corrected.

16. As a result thereof Plaintiffs have been required and continue to be required to survive on an extremely tight budget impacting their quality of life and *have sustained and continue to sustain severe emotional distress* worrying about the risk of losing their home.

*Am. Compl.* [#20] ¶¶ 14-16.  Taking Plaintiffs' allegations as true, Plaintiffs have sufficiently

alleged continuing injuries and a reasonable expectation that they may soon be subject to

improper foreclosure again.  *See Mobley*, 40 F.3d at 340; *Tandy v. City of Wichita*, 380

F.3d 1277, 1291 (10th Cir. 2004) (recognizing mootness if "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.") (citation omitted); *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (finding that an event is "capable of repetition, yet evading review" only where two narrow conditions are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again") (citations omitted).  Because Plaintiffs allege that "the foreclosure filed by Defendant remains pending in Mesa County and that Defendant is poised to foreclose in the event Plaintiffs' bankruptcy is dismissed or if they miss payments on the mortgage," the Court finds that Plaintiffs have alleged facts sufficient to create a reasonable expectation that Plaintiffs either  will continue to suffer collateral or secondary damages stemming from the threat of foreclosure or will be subject to the same foreclosure again. *Resp.* [#23] at 14.   Even assuming that Plaintiffs' Plan has modified Plaintiffs' loan obligations, this assumption does not suggest that the Chapter 13 Plan has removed all risk of foreclosure, and that injury is not still probable.[3]  Additionally, Plaintiffs seek monetary damages on their Second and Sixth Claims, which remain available if liability is proven in accordance with applicable law. *Am. Compl.* [#20] ¶¶ 28, 49; *see In re C.W. Mining Co.*, 641 F.3d 1235, 1239 (10th Cir. 2011) (holding case not moot where monetary relief was

---

[3]  The Court also notes that according to Plaintiffs, the Chapter 13 Plan was *not* a modification, and instead forced Defendant to involuntarily stop the progress of the foreclosure. *Am. Compl.* [#20] ¶ 12.  Plaintiffs allege that Defendant objected to Plaintiffs' original Chapter 13 Plan on the grounds that it attempted to "modify the Creditor's rights pursuant to the terms of the note and deed of trust." *Id.* Plaintiffs allege that based upon Defendant's objections, they proposed a plan that did not thus modify the obligations. *Id.* This allegation alone counters Defendant's main arguments for mootness of these issues.

possible).

Considering these allegations in the light most favorable to Plaintiffs, the Court declines to risk premature dismissal of Plaintiffs' claims. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex Corp. v. Catrett* , 477 U.S. 317, 324 (1986)). Therefore, the Court respectfully **recommends** that Defendant's Motion be **denied** to the extent that it seeks dismissal of Plaintiffs' Claim Two and Claim Six on the basis of mootness. Claim Three will be discussed below.

**B.    Claim One: RESPA**

**1.    Qualified Written Request**

Plaintiffs' first claim asserts a violation of RESPA based on Defendant's failure to respond to their Qualified Written Request ("QWR"). *Am. Compl.* [#20] ¶¶ 17-22. Defendant concedes that it did not reply to the Letter, and instead argues that the Letter is not a QWR requiring a response because it does not pertain to the servicing of the loan. *Motion* [#23] at 5-6; *Reply* [#26] at 3.

By its explicit terms, RESPA creates a duty on the part of the "servicer," a term which is strictly construed. *See Kee v. Fifth Third Bank*, No. 2:06-CV-00602-CW, 2009 WL 735048, at *4 (D. Utah Mar. 18, 2009). RESPA creates a duty for the servicer to provide information related to "the servicing of the loan." 12 U.S.C. §§ 2605(e)(1)(A), 2605(i)(3). This information includes reporting the borrower's payments, the distribution of the payments between principal and interest, and escrow disbursements to pay property taxes. *See Pool v. Wells Fargo Bank, N.A.*, No. 11-cv-01066-LTB-KLM, 2012 WL 3264294, at *6

(D. Colo. Aug. 10, 2012) (citing *De Vary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (noting that a request for information regarding financing of the original loan, rather than information regarding the servicing of that loan, is not covered by RESPA)).

The servicer of a federally related mortgage loan must acknowledge receipt of a QWR within twenty days of its arrival.  12 U.S.C. § 2605(e).  Within 60 days of receiving the request, the servicer must make applicable corrections or provide a written explanation as to why the servicer believes the account to be correct.  *Id.*  A RESPA letter must include information necessary to identify the borrower and either offer a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

The body of the Letter states, in full:

> Please consider this a formal written inquiry under 12 U.S.C. § 2605(e).  The loan may be identified by the information provided above.  I believe my account is in error for the following reasons:
>
> We love our home and desperately want to keep it.  We called right away after we couldn't make the payments asking for help.  We called you a lot after that asking for help.  Despite our pleas you have just accelerated our note and deed of trust and placed us in foreclosure.  As this is an FHA loan with standard FHA loan documents, our loan documents clearly indicate that this may not occur until you engaged in substantial loss mitigation activities.  Gene was laid off from the railroad but we always anticipated he would be called back.  We have been receiving unemployment and have a lawsuit that might settle from which we could potentially catch up.  Gene is now being called back to work and we could make some decent payments if you would work with us as required by FHA.  All along nobody even asked our circumstances.  Please correct our account by removing us from foreclosure, cancelling the purported acceleration and begin discussing options with us in good faith that would save our home.

Along these lines we have a series of questions relating to the servicing of our account:

1.      What loss mitigation activities such as recasting (24 CFR § 203.616) or special forbearance (24 CFR §§ 203.471 and 203.614) do you claim you have done since we first started falling behind in 2010?  When did you do these?

2.      Pursuant to 24 C.F.R. § 203.605 or otherwise what have you done on a monthly basis to evaluate "all of the loss mitigation techniques provided" by the regulations[?]

3.      What evaluation of your loss mitigation did you do as required by 24 C.F.R. § 203.606 before accelerating our loan and putting us in foreclosure[?]

4.      With all of our calls why did we never have a consultation interview to discuss our options to save our home per 24 CFR [sic] § 203.508?

5.      We were taken to Court in Mesa County for a Rule 120 Motion. We filed briefs in a state Court matter where you asked the judge to authorize the sale of our home.  When your lawyer had full knowledge of our claim that you just avoided loss mitigation, instead of fixing the problem she told our lawyer and argued to the judge that the Court could not consider this in a "Rule 120" matter and that we would need to file yet a separate lawsuit to consider for loss mitigation.  Why didn't you just try to correct this problem by considering our circumstances instead?

6.      Why do we have to go to court to get you to see we were never considered for loss mitigation such as recasting or special forbearance?

We ask pursuant to 12 U.S.C. § 2605(e)(2) that [you] correct this account by setting aside the acceleration, removing us from foreclosure and considering all loss mitigation options with us.  Also, provide all explanations required by statute.

*The Letter* [#23-3].

Defendant argues that the Letter does not pertain to the servicing of the loan but that, rather, it merely makes a request to discuss options regarding a modification of the existing loan.  *Reply* [#26] at 4.  "Servicing" is defined by RESPA as follows:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3). Further, servicing a loan may include the right to "make decisions concerning acceleration, foreclosure, redemption and deficiencies." *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987).

Here, the Court finds that the majority of Plaintiffs' Letter plainly concerns loss mitigation issues. Defendant cites to several cases from other districts that have held that loss mitigation is unrelated to the servicing of a loan. *See Reply* [#26] at 4-5 (citing to *Yakowicz v. BAC Home Loans Servicing, LP*, No. 12-1180 (DWF/LIB), 2013 WL 593902, at *5 (D. Minn. Feb. 15, 2013); *Beacham v. Bank of America, N.A.*, No. 3:12-CV-00801, 2012 WL 2358299, at *3 (N.D. Tex. May 25, 2012); *Van Egmond v. Wells Fargo Home Mortg.*, No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012); *In re Salvador*, 456 B.R. 610, 623 (M.D. Ga. 2011); *Williams v. Wells Fargo Bank, N.A., Inc.*, No. C 10-00399, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 3, 2010)). However, the Court need not decide whether the law in this district is the same as the persuasive authority offered from these other districts. Plaintiffs' Letter plainly asks for the acceleration to be set aside or cancelled and that Plaintiffs' property be removed from foreclosure. These actions all clearly fall within the Tenth Circuit's definition of servicing a loan, which includes issues in connection with acceleration and foreclosure. *See McVay*, 823 F.2d at 1398. Further, Plaintiffs' request that their account be corrected, although not very specific, appears to fall squarely within the statutory definition of the servicing of a loan, i.e., the taking and making

of payments from and on behalf of the borrower.  *See* 12 U.S.C. § 2605(i)(3).  The Court therefore finds that Plaintiffs' Letter was a QWR pursuant to RESPA.

### 2.    Causation and Damages

The parties also strenuously argue whether Plaintiffs have adequately alleged damages incurred as a result of Defendant's uncontested failure to reply to their Letter, although neither party cites to any applicable statutory or case law.  *See Motion* [#23] at 7; *Resp.* [#25] at 8; *Reply* [#26] at 5.  In the Amended Complaint, Plaintiffs allege that: (1) they "were forced to incur legal fees with their bankruptcy attorney to fight objections to their Chapter 13 bankruptcy plan based upon the failure to provide for payment of arrearages which should have been corrected by the RESPA request;" (2) they "have been forced to make payments on their mortgage during their Chapter 13 plan which should have been reduced in response to said letter;" and (3) "all of the foregoing have caused Plaintiffs to sustain a loss of their quality of life and severe emotional distress."  *Am. Compl.* [#20] ¶ 22.

Pursuant to RESPA, Plaintiffs are entitled only to actual damages arising from a violation and/or for statutory damages arising from a pattern or practice of violations.[4] *Toone v. Wells Fargo Bank, N.A.*, __ F.3d __, __ (2013), 2013 WL 856608, at *4 (10th Cir. Mar. 8, 2013).  Thus, to survive a Rule 12(b)(6) motion to dismiss a section 2605(e) RESPA claim, "Plaintiffs must plead actual damages stemming from the failure to respond

---

[4] "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: ... In the case of any action by an individual, an amount equal to the sum of (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."  12 U.S.C. § 2605(f)(1)(A), (B).

to requests or a pattern or practice of misconduct." *Id.* at *5.  Here, the Court finds that there are no allegations in the Amended Complaint regarding a pattern or practice of misconduct in violation of RESPA.[5]  Thus, Plaintiffs must plausibly demonstrate that they sustained actual damages arising from Defendant's failure to respond to the QWR.  *See id.*  In other words, Plaintiffs must adequately assert a causal link between their claimed actual damages and the alleged RESPA violation committed by Defendant.  *See Henson v. Bank of Am.*, __ F. Supp. 2d __, __ (2013), 2013 WL 1222095, at *13 (D. Colo. Mar. 25, 2013).

Here, Plaintiffs assert that Defendant's failure to respond to the QWR caused them to incur legal fees regarding issues that could have been avoided.  *Am. Compl.* [#20] ¶ 22. Plaintiffs further assert that Defendant's failure to respond to the QWR forced them to make excessive payments on their mortgage.  *Id.*  Finally, Plaintiffs assert that these issues caused them severe emotional distress.  *Id.*  The precise nature and extent of these alleged damages are unclear.  However, the Court finds that the asserted damages *may* have flowed from Defendant's failure to respond to the QWR, and that these allegations, taken as true, create more than a merely speculative claim for relief.  *See Henson*, 2013 WL 1222095, at *13 (citing *In re Tomasevic*, 273 B.R. 682, 688 (M.D. Fla. 2002)); *Christy Sports*, 555 F.3d at 1191.  Discovery is necessary to clarify these issues, but the Court finds that, at this early stage of the litigation, Plaintiffs have plausibly demonstrated the

---

[5]  The RESPA violation alleged here is the failure to respond appropriately to Plaintiffs' QWR, and Plaintiffs have failed to allege a pattern or practice of failing to respond to QWRs. Although Plaintiffs do allege that Defendant's choice to initiate an improper foreclosure was part of "a national and statewide pattern of conduct," this pattern of conduct relates only to the foreclosure action in violation of the HUD Regulations and the Deed of Trust, not to a failure to respond to a QWR pursuant to RESPA. *Am. Compl.* [#20] ¶ 47.

causation and damages elements required to support their RESPA claim.

Accordingly, the Court **recommends** that Defendant's request to dismiss Plaintiffs' RESPA claim be **denied**.

## C.    Claim Two: Breach of Contract

Plaintiffs allege that Defendant breached the Deed of Trust by foreclosing on the Property without complying with certain FHA Regulations. *Am. Compl.* [#20] ¶¶ 4, 23-28. "To recover on a breach of contract claim in Colorado, a plaintiff must prove the following elements: (1) a contract existed between the parties; (2) performance by the plaintiff; (3) failure to perform the contract by the defendants; and (4) resulting damage to the plaintiff." *Brill Gloria v. Sunlawn, Inc.*, No. 08-cv-00211-MSK-MEH, 2008 WL 5651458, at *3 (D. Colo. Aug 5, 2008) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

Paragraph 9(d) of the Deed of Trust provides that "[i]n many circumstances regulations issued by the Secretary [of HUD] will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Ex. B to Motion* [#23-2] at 4. Plaintiffs allege that Defendant violated § 203.501, which provides that:

> Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the

mortgagor's income, credit and property.

24 CFR § 203.501.  Plaintiffs allege that Defendant "accelerated the loan and instituted and continued foreclosure proceedings without considering in good faith the comparative effects of their [sic] elective servicing actions," violating § 203.501 and thus breaching an incorporated clause of the Deed of Trust.  *Am. Compl.* [#28] ¶ 25.a.  Plaintiffs further allege that Defendant instituted and continued foreclosure proceedings without "employing, in good faith, collection techniques reasonably adapted to Plaintiff's [sic] circumstances and individual differences," *id.* ¶ 25.b., "evaluating on a monthly basis all of the loss mitigation techniques provided [by] § 203.501," *id.* ¶ 25.c., or "complying with the required 'pre-foreclosure review,'" *id.* ¶ 25.d., in violation of the HUD Regulations.

Defendant argues that "[a]t best, the language in the Deed of Trust is nothing more than a condition precedent to accelerating the debt, which may only be used as an affirmative defense to foreclosure."  *Reply* [#26] at 2.  A condition precedent is "one which is to be performed before *some right dependent thereon accrues.*"  *Colo. Interstate Corp. v. CIT Grp./Equip. Fin., Inc.*, 993 F.2d 743, 755 n.18 (10th Cir. 1993) (quoting Black's Law Dictionary 293 (6th ed. 1990)) (emphasis added).  In other words, a condition precedent is a condition whose occurrence is required before the contract takes effect, and "[i]f the condition does not occur and is not excused, the promised performance need not be rendered."  *Goodwin v. H.M. Brown & Assocs., Inc.*, No. 10-cv-01205-PAB-MEH, 2011 WL 820025, at *4 (D. Colo. Mar. 2, 2011) (quoting Black's Law Dictionary 312 (8th ed. 2004)).  Thus, the questions before the Court are (1)  whether paragraph 9 of the Deed of Trust identifies a condition precedent to acceleration or foreclosure on a Deed of Trust or whether the provision actually incorporates the HUD Regulations into the contract itself, and (2) if

the provision actually incorporates the HUD Regulations into the contract, whether Plaintiffs sufficiently pled the elements for breach of contract.

### 1.    HUD Regulations as Incorporated Terms or Conditions Precedent

Initially, the Court must determined whether the language of the Deed of Trust permits Plaintiffs to use an alleged failure to comply with HUD Regulations as a basis for a breach of contract claim, particularly given that the HUD Regulations do not independently create a private cause of action.  *See Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 701 F.2d 112, 114 (10th Cir. 1983).  Although the Court's survey of relevant case law and the cases cited by the parties[6] indicates that there is a split in authority and approaches to this issue, no state or federal court within the Tenth Circuit appears to have determined whether the precise language at issue here incorporates the HUD Regulations into the contract or merely creates a condition precedent to compliance.  However, a number of other state courts and federal district courts have examined the issue.

Some courts have held that a mortgagee's noncompliance can be asserted as an affirmative defense or an equitable defense to a judicial-foreclosure action.  *See, e.g.*, *Lacy-McKinney v. Taylor, Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 864 (Ind. Ct. App. 2010); *Wells Fargo v. Neal*, 922 A.2d 538, 543-544 (Md. 2007); *Washington Mut. Bank v. Mahaffey*, 796 N.E.2d 39, 42-44 (Ohio Ct. App. 2003); *Fed. Land Bank of St. Paul v. Overboe*, 404 N.W.2d 445, 449 (N.D. 1987); *Fleet Real Estate Funding Corp. v. Smith*, 530 A.2d 919, 922-923 (Pa. 1987); *Bankers Life Co. v. Denton*, 458 N.E.2d 203, 205 (Ill.

---

[6] The Court has reviewed each case cited by the parties on this issue, even if not otherwise cited in this Recommendation.  *See Motion* [#23] at 10-13; *Response* [#25] at 9-10; *Reply* [#26] at 6-8.  No binding or persuasive case law from this district has been cited by either party.

App. Ct. 1983).  These cases hold that the HUD Regulations do not create an implied cause of action for damages, but may be used as an affirmative defense to a judicial foreclosure action instituted by the creditor.  For example, an appeals court in Ohio recently determined that "the contract documents in this case subject the holder's rights upon default to applicable HUD regulations:"

> BAC Home Loans' argument about a "private right of action" has no bearing on whether the loan is subject to HUD regulations and whether failure to comply may be used defensively to bar foreclosure.  The note and mortgage at issue in this case unambiguously provide that the rights of the lender in the case of default by the borrower are "limited by regulations of the Secretary [of Housing and Urban Development or his or her designee] . . . ."  Those regulations include 24 C.F.R. [§] 203.604, which requires a face-to-face interview with the mortgagor prior to initiating a foreclosure action.  BAC has not argued that it satisfied the regulation or that some exception applied in this situation.  It makes no difference whether HUD regulations are meant to govern only the relationship between HUD and mortgagees.  In this case, the mortgagee and the mortgagor agreed to limit the mortgagee's rights to accelerate and foreclose based on applicable HUD regulations.  Thus, by contract, BAC Home Loans was required to comply with the HUD regulations governing acceleration and foreclosure, and *the [plaintiffs] were entitled to use any failure to do so as a shield in the subsequent foreclosure case*.

*BAC Home Loans Servicing, LP v. Taylor*, __ N.E.2d __, __ (2013), 2013 WL 456890, at *5-6 (Ohio Ct. App. Feb. 6, 2013) (emphasis added).  Thus, the Ohio court held that the contract provision meant that the mortgagor could use the mortgagee's failure to comply with the HUD Regulations as an affirmative defense against a foreclosure action.

Similarly, an appeals court in California concluded after an extensive discussion that the plaintiffs could (1) "request the court to enjoin the nonjudicial foreclosure procedure based on the failure to [comply with the HUD Regulations] as mandated by the FHA [D]eed of [T]rust" and (2) request declaratory relief stating that the lenders do not have the authority to proceed with a nonjudicial foreclosure until they comply with the HUD servicing

regulations." *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1240, 1281 (2012).  However, the court further held that the plaintiffs could not use the defendants' alleged failure to comply with the HUD Regulations as the basis for a breach of contract claim for damages, because "the breach of these regulations do not ordinarily provide a private right of action." *Id.* at 1282.

Not all courts agree with this reasoning.  For example, the defendants before a federal district court in the Eastern District of Virginia, construing the same language at issue here, argued that their alleged failure to comply with the HUD Regulations was an affirmative defense to foreclosure, but that there was no related private cause of action. *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-CV-617, 2013 WL 350527, at *3 (E.D. Va. Jan. 29, 2013).  There, the court disagreed, applying Virginia law to find that: (1) a provision in a Deed of Trust requiring compliance with the HUD Regulations "is a condition precedent to the accrual of the rights of acceleration and foreclosure incorporated into the [D]eed of [T]rust;" (2) "a lender must comply with all conditions precedent to foreclosure in a [D]eed of [T]rust even if the borrowers are in arrears;" and (3) by asserting that the defendants failed to comply with a HUD Regulation, the plaintiffs sufficiently alleged that the defendants "failed to satisfy a condition precedent to foreclosing on the home, *and thus, have breached the Deed of Trust.*"  *Id.* at *5.  The *Bagley* court allowed the plaintiff's breach of contract claims for damages to survive dismissal.  *Id.* n.3.

Recently, there have been a significant number of cases holding that, while the HUD Regulations alone do not provide a mortgagor with a private right of action, *Mitchell v. Chase Home Fin. LLC*, 06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008), they become enforceable by a private right of action if they are incorporated into a

mortgagor's loan documents. *Sinclair v. Donovan*, 11-cv-00010, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011); *Mullins v. GMAC Mortg., LLC*, 09-cv-00704, 2011 WL 1298777 (S.D.W.V. Mar. 31, 2011); *Kersey v. PHH Mortg Corp.*, 682 F. Supp. 2d 588, 596-97 (E.D. Va. 2010); *In re Shelton*, 481 B.R. 22, 28 n.19 (W.D. Mo. 2012).   In a particularly persuasive example, a federal bankruptcy court in the Western District of Missouri recently held that a breach of contract claim can be made based on a contract term incorporating the HUD Regulations. *In re Shelton*, 481 B.R. at 30 (W.D. Mo. 2012). There, the debtor alleged, among other things, that her deed of trust incorporated the HUD Regulations governing acceleration and foreclosure for all FHA-insured loans, and that the bank breached the terms of the deed of trust by foreclosing without pursuing loss mitigation options as required by the deed of trust and the HUD Regulations. *Id.* at *27. Applying Missouri breach of contract law, the court distinguished the borrower's breach of contract claim from a suit to enforce HUD Regulations "under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer." *Id.* at *29 (quoting *Mullins*, 2011 WL 1298777, at *3). The *Shelton* court found that she had pled sufficient facts to show that she suffered an injury from the alleged breach, and could thus pursue monetary damages. *Id.* at *30.

For purposes of this Motion, the Court finds *Shelton* and similar cases to be persuasive. The Court does not interpret paragraph 9 of the Deed of Trust to excuse either party from performance under the contract and, therefore, the term cannot by definition be read as a condition precedent. *See* Restatement (First) of Contracts, § 250. A condition precedent is a condition whose occurrence is required before the contract takes effect, and "[i]f the condition does not occur and is not excused, the promised performance need not

be rendered." *Goodwin*, 2011 WL 820025, at *4.  Creating a condition precedent that may only be violated by the mortgage provider upon improper foreclosure seems highly illogical. Such a condition precedent would create a scenario which would excuse borrowers' breaches of the Deed of Trust only after improper foreclosure has begun.

Additionally, even if the language in paragraph 9 is required in the Deed of Trust, Defendant offers no explanation for HUD's decision to require this language pursuant to 24 CFR § 203.17(a)(2)(I) if the HUD Regulations are meant to affect *only* the relationship between the lender and the government, rather than the lender and the borrower.  While the HUD Regulations themselves govern the relationship between the lender and the government, the Court sees no reason for HUD to require mortgagees to refer to these regulations in the Deed of Trust other than to affect the duties of the parties to the contract. *See In re Sheldon*, 481 B.R. at 30.  For these reasons, the Court finds that the language of the Deed of Trust incorporates the duties outlined in the HUD Regulations,[7]  and that Plaintiffs may pursue a claim for breach of contract stemming from an alleged violation of these terms.

### 2.    Elements of a Breach of Contract Claim

The Court must apply Colorado breach of contract law to determine the viability of Plaintiffs' claim.  "Pursuant to Colorado law, the elements for breach of contract are: (1) existence of a contract; (2) performance by the plaintiff (or justification for nonperformance); (3) failure of the defendant to perform the contract; and (4) damages to the plaintiff." *Smith*

---

[7]  The Court notes that the court in *Bagley* relies in part on the holding in *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 735 (2012), which specified in its analysis the same contractual language that "only those regulations that prevent a lender from accelerating or foreclosing are incorporated by the cited language in the Deed of Trust."

*v. Starwood Aspen Realty, LLC*, No. 12-cv-00884-CMA-KLM, 2013 WL 426790, at *2 (D.

Colo. Jan. 11, 2013) (citing *W. Distrib. Co.*, 841 P.2d at 1058).

For the purpose of the present Motion, Defendant does not seem to contest that a

contract exists. *Motion* [#23] at 11-13.[8] Thus, taking Plaintiffs' allegations in the light most

favorable to their claims, the Court finds that the first element of a breach of contract claim

has been adequately pled. *See Adickes*, 398 U.S. at 157 (1970); *Celotex*, 477 U.S. at 324.

Concerning the second element, it could be argued that Plaintiffs' payment default excused

Defendant from its obligations to comply with the HUD Regulations. *See Reply* [#26] at 7.

However, the Court finds persuasive the reasoning of the court in *Sinclair*.  That court

noted:

> Indeed, the fact that the contract specifically contemplates the Plaintiff falling
> into arrears by imposing obligations on the Defendant to do certain things in
> the event of arrearage prior to commencing foreclosure—such as having a
> face-to-face meeting with the mortgagor—suggests that simply falling into
> arrears on the note is not a material breach . . . . *[It] would be an absurd
> result if the Lender Defendants were allowed to ignore the contract terms
> drafted to govern their post-default conduct on the grounds that the
> mortgagors have defaulted.* We find that [the HUD Regulations] concerning
> loss mitigation are enforceable terms of the mortgage contract between the
> parties and that Plaintiffs cannot be denied the benefit of these provisions by
> virtue of the fact of simple default.

*Sinclair*, 2011 WL 5326093, at *7-8 (emphasis added) (internal citation omitted).  Here, the

---

[8] Defendant alleges in its Reply, briefly and without citation to authority, that "the Deed of Trust is a form mandated by the Federal Housing Administration." *Reply* [#26] at 6.  However, the Court's review of  24 CFR. § 203.17(a)(2)(I) seems to suggest that while HUD does require that certain language be incorporated into deeds of trust which secure federally insured loans, the intentions expressed in 24 CFR §§ 203.500 and 203.606(a) do not suggest that this requirement invalidates the document's contractual nature.  Thus, the Court holds that the Deed of Trust is a contract.  *See Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 202 (Va. 2012).  The Court also notes Defendant's citation to the non-binding case of *Wells Fargo Home Mortg.*, 922 A.2d 538, which discussed whether or not a deed of trust using HUD-mandated language was a bargained-for contract, and finds these concerns unpersuasive.

Deed of Trust specifically contemplates the possibility that Plaintiffs could fall behind on payments, and provides binding duties for each contracting party in such an event. *See Tromp v. Martinez*, 719 P.2d 380, 381 (Colo. App.1986) ("Rescission is a proper remedy where, as here, there is such a substantial breach of the contract that the conduct of the parties is inconsistent with its continued existence."). Considering Plaintiffs' allegations regarding their initial "lengthy" pattern of timely payments and their continued attempts to make partial payments after facing financial difficulties, the Court also finds that, even if this pleading falls short of showing Plaintiffs' substantial performance, Plaintiffs have adequately alleged justification for nonperformance. *Am. Compl.* [#20] ¶ 9. Thus, taking these allegations as true, the Court finds that the second element of a breach of contract claim has been sufficiently pled. *See Mobley*, 40 F.3d at 340.

Assuming that the HUD Regulations are incorporated into the Deed of Trust, Plaintiffs have sufficiently alleged that Defendant acted in violation of these terms. Plaintiffs allege that Defendant "accelerated the loan and instituted and continued foreclosure proceedings without considering in good faith the comparative effects of their [sic] elective servicing actions," and that Defendant instituted and continued foreclosure proceedings without "employing, in good faith, collection techniques reasonably adapted to Plaintiff's [sic] circumstances and individual differences, . . . evaluating on a monthly basis all of the loss mitigation techniques provided [by] § 203.501, [or] complying with the required 'pre-foreclosure review.'" *Am. Compl.* [#20] ¶ 25. Plaintiffs also assert that "because of the extreme difference between the loss mitigation contemplated by the contract and the high amount of the payment plus the arrearages in [Plaintiffs'] Chapter 13 plan, it is highly difficult for Plaintiffs to keep up with the required payments." *Am. Compl.* [#20] ¶ 13.

Plaintiffs' allegations, interpreted in the light most favorable to their claims, further suggest that the alleged breach has placed Plaintiffs in "a very risky position for foreclosure which hurts both FHA and Plaintiffs." *Id.*; *see Adickes*, 398 U.S. at 157; *Celotex*, 477 U.S. at 324. Finally, Plaintiffs assert that due to this alleged breach, they "have sustained and continue to sustain severe emotional distress worrying about the risk of losing their home." *Id.* ¶ 16. Though the precise extent of these alleged damages is unclear at this stage, the Court finds that there is more than a speculative chance that the asserted damages flowed from Defendant's alleged breach of the Deed of Trust. *See Christy Sports*, 555 F.3d 1191. Discovery is necessary to clarify these issues, but the Court finds that, for the purposes of overcoming a motion to dismiss, Plaintiffs have plausibly demonstrated the causation and damages elements required to support their breach of contract claim.

At this stage of the proceeding, the Court need only decide whether Plaintiffs have sufficiently pled the elements for breach of contract. *See Robbins*, 519 F.3d at1247. Therefore, the Court finds that, based on the foregoing, Plaintiffs have sufficiently pled the existence of an enforceable contract, a justification for nonperformance, that Defendant failed to fully perform the obligations in paragraph 9 of the Deed of Trust; and that Plaintiffs were damaged as a result of the alleged breach. Accordingly, the Court **recommends** that Defendant's request to dismiss Plaintiffs' breach of contract claim be **denied**.

**D.      Claim Three: Equitable Relief**

Plaintiffs' Amended Complaint seeks an injunction ordering that Defendant dismiss its pending foreclosure and proceed no further with foreclosure "until such time as it demonstrates full compliance in good faith with the conditions of the contract regarding loss

mitigation." *Am. Compl.* [#20] ¶ 32.  However, Plaintiffs conceded in their Response to the Motion that this issue is now moot.  *Resp.* [#25] at 10, 15.  Therefore, the Court respectfully **recommends** that Plaintiff's Third Claim for equitable relief against Defendant be **dismissed without prejudice**.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction ..., the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

### E.    Claim Four: Colo. Rev. Stat. §§ 38-40-103 and -104

As their Fourth Claim for relief, Plaintiffs allege that Defendant violated Colorado statutes that govern the servicing of mortgages and deeds of trust.  Plaintiffs assert that Defendant violated Colo. Rev. Stat. §§ 38-40-103 and -104 by failing to provide to them the information they requested about the servicing of their mortgage loan.  Pursuant to Colorado law, the servicer of a mortgage loan is required to "respond in writing within twenty days from the receipt of a written request from the debtor . . . for information concerning the debtor's loan, which is readily available to the servicer from its books and records . . . ."  C.R.S. § 38-40-103(2).  A debtor aggrieved by a violation of § 38-40-103 may bring an action for actual damages and statutory damages of $1,000.00, plus reasonable attorney fees and costs, if the "violation is not remedied in a reasonable, timely and good faith manner by the party obligated to do so, and after a good faith effort to resolve the dispute is made by the debtor."  C.R.S. § 38-40-104.

Defendant argues that Plaintiffs' Letter was devoid of reference to this statute and

therefore was not a request pursuant to the statute. *Motion* [#23] at 8 (citing *Pool*, 2012 WL 3264294, at * 6-7 (holding that written request that did not mention Section 38-40-103 was not made pursuant to that section)).   The Court notes that in *Pool*, the only Colorado court case interpreting the statute, the District Judge held that a written request labeled as a QWR made pursuant to RESPA was not also made pursuant to the Colorado statute.   2012 WL 3264294, at *14-17.   Plaintiffs respond by arguing that their Letter meets all of the requirements of the statute, which they note contains "no requirement that the consumer set forth statutory authority" for their request.   *Resp.* [#25] at 11.   Plaintiffs also argue that there is no statutory restriction on a written request serving as both a QWR pursuant to RESPA and a "written request from the debtor" pursuant to C.R.S. § 38-40-103.

Although noting the non-binding case law cited by Defendant, the Court respectfully disagrees with its analysis of C.R.S. § 38-40-103.   The Colorado Supreme Court has directed courts interpreting Colorado statutes to first look to the statutory language in question. *Byrne v. Title Board*, 907 P.2d 570, 573 n.2 (Colo. 1995).   Where that language is clear and unambiguous, courts are to "give effect to the plain and ordinary meaning of the statute, without resorting to other rules of statutory construction." *Hayes v. Ottke*, 293 P.3d 551, 554 (Colo. 2013) (citing *Byrne*, 907 P.2d at 573).   The Court's review of the statutes at issue reveal that they contain no requirement that the consumer either identify their request as a "written request from the debtor" or "set forth statutory authority" for their request.   *See* C.R.S. § 38-40-103.   The Court can see no reason to read such a requirement into the statute, as the substantive nature of any written request would be unaffected by a mere change in headings or labels.   *Cf. Frison v. WMC Mortg. Corp.*, No. 09cv1733-LAB, 2011 WL 4571753, at *4 (S. D. Cal. Sept. 30, 2011) (holding that letters

failing to meet the criteria of a QWR pursuant to RESPA were "not genuine qualified written requests even though they are labeled as such"). Neither can the Court locate statutory language or binding case law indicating that a QWR pursuant to RESPA cannot also serve as a "written request from the debtor" pursuant to C.R.S. § 38-40-103. In fact, in this Court's recent ruling in *Henson v. Bank of America,* __ F. Supp. 2d __ , __ (2013), 2013 WL 1222095, at *11-12 (D. Colo. March 25, 2013), the Court denied Bank of America's motion to dismiss the Hensons' claim for relief pursuant to § 38-40-104, even though the court had already found that the Hensons' letters were also QWRs pursuant to RESPA. On the clear and unambiguous language of the statute, §§ 38-40-103 and -104 require only (1) "a written request from the debtor," (2) "for information concerning the debtor's loan" that is (3) "readily available to the servicer." C.R.S. § 38-40-103(2).

Defendant does not contest the fact that Plaintiffs' Letter constitutes a written request, and thus the Court finds that the first element of § 38-40-103(2) has been sufficiently pled. *Am. Compl.* [#20] ¶¶ 19, 37. However, Defendant does contest the second element, arguing that it "would make logical sense to interpret [the scope of C.R.S. § 38-40-103] requests coextensively with RESPA, since both statutes are clearly addressed to the servicing of residential mortgage loans." *Motion* [#23] at 8; *compare* C.R.S. § 38-40-103 *with* 12 U.S.C. § 2605(e). The Court has already found that this element has been sufficiently pled, since Plaintiffs' Letter appears to fall squarely within the Tenth Circuit's definition of the servicing of a loan. *See McVay*, 823 F.2d at 1398. Defendant also contests the last factor, arguing that "the type of information sought by Plaintiffs in their March 31, 2011 letter was not 'readily available' from [Defendant's] 'books and records' [because the letter] asked for justification for [Defendant's] actions, which . . . calls for a

legal opinion/advice [and] would have required more than merely consulting [Defendant's] books and records." For the purposes of the pending motion, the Court must construe the allegations in the light most favorable to Plaintiffs. *Adickes*, 398 U.S. at 157; *Celotex*, 477 U.S. at 324. However, even in such a light, Plaintiffs' Amended Complaint makes no allegations regarding the *availability* of the requested information, alleging instead that Plaintiffs requested "limited, targeted information in order to correct the defect." *Am. Compl.* [#20] ¶ 27.

On the current pleading, the Court finds that Plaintiffs have failed to sufficiently allege facts supporting a claim pursuant to § 38-40-104. Accordingly, the Court **recommends** that Defendant's request to dismiss Plaintiffs' Fourth Claim for relief be **granted**, and that Plaintiffs' Fourth Claim be **dismissed without prejudice**. *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

**F.     Claim Five: Extreme and Outrageous Conduct**

To state a claim for outrageous conduct pursuant to Colorado law, Plaintiffs must allege that (1) Defendant engaged in extreme and outrageous conduct, (2) Defendant did so recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) the conduct did indeed cause the plaintiff severe emotional distress. *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1068-69 (D. Colo. 2009) (citing *Green v. Qwest Servs. Corp.*, 155 P.3d 383, 385 (Colo. App. 2006)).[9] To rise to the level of "extreme and

---

[9] Outrageous conduct claims are also known as claims for intentional infliction of emotional distress. *Llewellyn*, 622 F. Supp. 2d at 1068.

outrageous" conduct, Plaintiffs "must allege behavior that is extremely egregious." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999).   The alleged behavior must be "atrocious and utterly intolerable in a civilized community." *First Nat'l Bank v. Collins*, 616 P.2d 154, 156 (Colo. App. 1980).   "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." *Archer v. Farmer Bros. Co.*, 70 P.3d 495, 499 (Colo. App. 2002); *see also Ramierz v. Barclays Capital Mortg.*, No. CV F 10-1039-LJO-SKO, 2010 U.S. Dist. LEXIS 64226, at *30 (E.D. Cal. June 28, 2010) (stating that an action to collect a debt can only rise to the level of intentional infliction of emotional distress "if it goes beyond all reasonable bounds of decency").   However, "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he [or she] has actual or apparent authority over the other, or the power to affect the other's interests." *Pearson v. Kancilia*, 70 P.3d 594, 598 (Colo. App. 2003) (citation omitted).

Plaintiffs allege that "Defendant engaged in extreme and outrageous conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Am. Compl.* [#20] ¶ 41.   They allege that, knowing the extremely high likelihood of causing very severe emotional distress to Plaintiffs, Defendant "deliberately acted in bad faith, sidestepped, passive-aggressively resisted and obstructed compliance with its loss mitigation requirements . . . all with the motive of maximizing its own profits through the collection of foreclosure related fees." *Id.* ¶ 41.a-b.   Plaintiffs allege that Defendant acted "recklessly or with the intent of causing the Plaintiffs severe emotional distress," and that "Defendants' [sic] conduct caused [ ] Plaintiffs severe emotional distress

that was a real injury manifested by physical symptoms." *Id.* ¶¶ 42-43.

Although the jury usually determines as a matter of fact whether the conduct at issue was outrageous, "it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 883 (Colo. 1994). The "tort of outrageous conduct was designed to create liability for a very narrow type of conduct," *id.*, and the "level of outrageousness required to create liability is extremely high," *Pearson*, 70 P.3d at 597. Here, the Court finds that Plaintiffs fail to meet this high standard as a matter of law.

The Court recognizes the impact of Defendant's decision to initiate foreclosure proceedings on Plaintiffs and the inconvenience, pain, and suffering the threat of losing their home may have caused. However, not every action causing emotional distress creates a valid claim of outrageous conduct, and the Court is instead "required to look at [Defendant's] conduct itself and not simply the consequences of that conduct." *Green*, 155 P.3d 387. The Court's own comparison of Defendant's alleged conduct with conduct that has been regarded as outrageous in other cases shows that reasonable persons could not differ in deciding that the conduct alleged here falls short of being outrageous. *See Pearson*, 70 P.3d 594 (finding outrageous conduct where a male chiropractor threatened to stop treating a patient if she did not continue to have sex with him and to fire an employee if she did not also continue to have sex with him); *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970) (finding outrageous conduct where a creditor engaged in a continuous campaign of harassment via telephone, mail, and threats to garnish wages); *Meiter v. Cavanaugh*, 580 P.2d 399 (Colo. App. 1978) (finding outrageous conduct where an attorney belligerently refused to vacate premises for subsequent tenant, without regard

for her poor medical condition, and implied he had special influence in judicial proceedings). The Court has also reviewed the case of *Stich v. BAC Home Loans Servicing, LP*, No. 10-cv-01106-CMA-MEH, 2011 WL 1135456 (D. Colo. Mar. 29, 2011), a case cited by Plaintiffs as involving conduct far less egregious than what is present in this case. *See Resp.* [#25] at 11. In *Stich*, the Court ruled that a reasonable jury could find outrageous conduct where Stich alleged that a creditor "repeatedly, knowingly and maliciously provid[ed] false credit information to several credit reporting agencies after Mr. Stich notified the Defendant and the consumer credit reporting agencies of the false information reported." *Stich*, 2011 WL 1135456, at *7. The Court respectfully disagrees with Plaintiffs' assessment of Defendant's conduct as "many times worse" than the conduct alleged in *Stich. Resp.* [#25] at 11. Unlike the situation in *Stich*, which involved allegations of a repetitive pattern of malicious and targeted behavior, the allegations here suggest no more than the possibility that Defendant breached its contract and initiated an improper foreclosure.[10] Even assuming a breach of a contractual duty, Plaintiffs have alleged nothing more than an improper foreclosure proceeding. *See Tatten v. Bank of Am. Corp.*, No. 12-cv-0459, 2012 U.S. Dist. LEXIS 178049, at *21-23 (D. Colo. Dec. 17, 2012) (failure to grant a loan modification and alleged negligent misrepresentation did not rise to the level of outrageous conduct); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653, 2011 U.S. Dist. LEXIS 110957, at *14-15 (D. Colo. Sept. 28, 2011) (foreclosure action did not rise to the level of intentional infliction of emotional distress). Although such conduct could be considered

---

[10] The Court notes that BAC was later found to be entitled to summary judgment on Stich's outrageous conduct claim. *See Stich v. BAC Home Loans Servicing, LP*, 10-cv-01106-CMA-MEH, 2012 WL 619241, at *6 (D.Colo. Feb. 27, 2012), on the grounds that "reasonable persons could not differ in deciding that BAC's conduct fell short of being outrageous."

unprofessional, and perhaps unsympathetic, it does not "go beyond all possible bounds of decency" or rise to the level of being "atrocious . . . and utterly intolerable in a civilized community." *Destefano v. Gabrian*, 763 P.2d 275, 286 (Colo. 1988).

Accordingly, Plaintiffs fail, as a matter of law, to state a claim for extreme and outrageous conduct, and the Court respectfully **recommends** that Claim Five of Plaintiffs' Amended Complaint be **dismissed with prejudice**. *See Wells v. Dean*, 80 F. App'x 33, 35 (10th Cir. 2003) (affirming a district court's dismissal with prejudice where the plaintiff's allegations were insufficient to state a claim of outrageous conduct pursuant to Colorado state law).

**G.     Claim Six: Colorado Consumer Protection Act**

The CCPA was enacted to provide a remedy "against consumer fraud." *W. Food Plan, Inc. v. Dist. Ct.*, 598 P.2d 1038, 1041 (Colo. 1979). To prove a private claim for relief pursuant to the CCPA, Plaintiffs must show:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). If all elements of a CCPA claim are not met, the claim fails as a matter of law. *HealthONE, Inc. v. UnitedHealth Grp., Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011).

**1.     Deceptive Practice**

The Court first addresses Defendant's argument that Plaintiffs fail to allege an unfair

or deceptive practice.  *Motion* [#23] at 15.  Pursuant to C.R.S. § 6-1-105(1)(e), a deceptive trade practice occurs when a person "knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alternatives or quantities of goods, food, services or property . . . ."  Defendant argues that the misrepresentation alleged by Plaintiffs was not made to a consumer, but rather to the FHA, and that the alleged actions could not have a significant public impact as required by the CCPA.  *Motion* [#23] at 15.

In their Amended Complaint, Plaintiffs allege that Defendant "made a pretext of complying" with the requirements of its contract and the HUD regulations.  *Am. Compl.* [#20] ¶ 25.e.  They also allege that Defendant acted with the intent to "cheat the Federal Housing Administration by making a pretext of complying with its loss mitigation requirements and the contract with Plaintiffs, and profit thereby."  *Id.* [#20] ¶ 41.  In asserting their CCPA claim, Plaintiffs allege that Defendant "entered into direct agreements with consumers such as Plaintiffs agreeing to perform loss mitigation functions, in part, to keep people in their homes as required by FHA."  *Id.* [#20] ¶ 46.  They additionally allege that Defendant "mechanically mov[ed] borrowers who [could] not make full timely payments to foreclosure sales" as "part of a nationwide and statewide pattern of conduct, aimed at profiting . . . at the expense of consumers and FHA."  *Id.* [#20] ¶ 47.

Though Plaintiffs repeatedly and disparagingly refer to Defendant's decision to foreclose as "mechanical," *Am. Compl.* [#20] ¶¶ 10, 40, 41.a, 47, a mechanical decision, while perhaps lacking compassion, is by no reasonable interpretation "deceptive."  Putting aside these allegations of Defendant's insensitivity, Plaintiffs allege only that Defendant "made a pretext of complying" with the requirements of its contract and the HUD regulations.  *Am. Compl.* [#20] ¶ 25.e.  However, having reviewed the statute carefully, the

Court can identify no language that would classify a "pretext of compliance" as a deceptive business practice. *Compare Dawson v. Litton Loan Servicing, LP*, No. 12-cv-01334-CMA-KMT, 2013 WL 1283848, at *4 (D. Colo. Mar. 28, 2013) (finding that Plaintiffs had pled sufficient facts to state a CCPA claim where Plaintiffs alleged similar facts to this case in addition to actual misrepresentation and reliance on said deception)*, and Weigel v. BAC Home Loans Servicing, LP*, No. 09-cv-02546-RPM-KMT, 2011 WL 1135319, at *5 (D. Colo. Mar. 29, 2011) (finding deceptive practices where plaintiffs alleged that the loan provider had engaged in deceptive advertising practices), *with Gen. Steel Domestic Sales, LLC v. Hogan & Hartson, LLP*, 230 P.3d 1275, 1282 (Colo. App. 2010) ("The legislature did not intend for the CCPA to remedy circumstances in which a person merely fails to provide goods or services as promised.") *and Paul v. Tindell*, No. 02 CV 373, 2003 WL 24199540, at *5 (Colo. Dist. Ct. Apr. 2, 2003) (finding that, where no reliance or actual deception was shown, the plaintiff's claim was more properly brought under contract law).   Plaintiffs' accusatory turn of phrase translates under the law as a mere allegation of an intent to breach a contract, and not of an intent to deceive.   *See Terry's Floor Fashions, Inc. v. Georgia-Pac. Corp.*, No. 5:97-CV-683, 1998 WL 1107771, at * 10 (E.D.N.C. July 23, 1998) (emphasizing that a breach of contract claim cannot be converted into one for unfair and deceptive trade practices by "'artfully pleading' the appropriate legal language for such a claim" (citations omitted)); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (holding that pursuant to North Carolina law, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA.]") (citation omitted); *United Roasters, Inc. v. Colgate Palmolive Co.*, 649 F.2d 985, 992 (4th Cir. 1981) ("Whatever the limit of their reach, however, the words must mean

something more than an ordinary contract breach. In a sense, unfairness inheres in every breach of contract . . . ."). Even interpreting the CCPA broadly, the language therein "cannot fairly be understood to mean that everyone who acts unlawfully, and does not admit the transgression, is being 'deceptive.'" *Schlessinger v. Valspar Corp.*, __ N.E.2d __, __, 2013 WL 2338425 (N.Y. May 30, 2013).

### 2. In the Course of Business

Plaintiffs allege that Defendant, as a residential mortgage servicer, "is engaged in the business of offering services to a substantial number of consumers in Colorado." *Am. Compl.* [#20] ¶ 45. The deceptive practices alleged here are quite explicitly alleged to have occurred in the course of such services. Defendant, while contesting the allegations of deceptive practices, does not contest this element, and the Court finds that it has been sufficiently pled.

### 3. Public Impact

The Court next turns to Defendant's argument that Plaintiffs fail to allege a public impact. *Motion* [#23] at 15. The Colorado Supreme Court has established three factors to be considered in determining whether a challenged practice significantly impacts the public as consumers: (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) the evidence that the challenged practice previously had impacted other consumers or had significant potential to do so in the future. *Rhino Linings USA*, 62 P.3d at 146-47 (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

Plaintiffs, though alleging a breach of contract, have not pled any facts suggesting that these contract terms were used as part of Defendant's promotional activities to deceive

Plaintiffs or potential customers, or that the contracts were made available to anyone other than the contracting parties.  However, Plaintiffs do allege that Defendant has an extensive presence in Colorado as a large residential mortgage servicer with a "substantial number of consumers."  *Am. Compl.* [#20] ¶ 45.  They allege that Defendant's conduct was "part of a nationwide and statewide pattern of conduct, aimed at profiting, avoiding losses or both, at the expense of consumers and FHA."  *Am. Compl.* [#20] ¶ 47.  Citing *Mortgage Servicing*, Letvin, Twomey, 28 Yale Journal on Regulation 1 (Winter 2011), Plaintiffs seem to allege that this pattern of conduct is made possible by variations in mortgagees' legal sophistication and bargaining power, and is motivated by Defendant's economic conflict of interests with FHA in deciding whether to foreclose, as foreclosure more often benefits Defendant's profits.  *Am. Compl.* [#20] ¶¶ 10, 47.  Although resting on practices that the Court has found are insufficient to meet the CCPA's first requirement, the Court acknowledges that given these factual assertions, which for purposes of the instant motion the Court accepts as true, *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), Plaintiffs' allegations are sufficient to meet the factors articulated in *Rhino Linings* for the public impact element of a CCPA claim.  *See Dawson*, 2013 WL 1283848, at *5.

### 4.     Injury in Fact to Legally Protected Interest

The Amended Complaint alleges several injuries resulting from Defendant's uncontested failure to reply to Plaintiffs' QWR pursuant to RESPA.  In their Amended Complaint, Plaintiffs allege that: (1) they "were forced to incur legal fees with their bankruptcy attorney to fight objections to their Chapter 13 bankruptcy plan based upon the failure to provide for payment of arrearages which should have been corrected by the

RESPA request;" (2) they "have been forced to make payments on their mortgage during their Chapter 13 plan which should have been reduced in response to said letter;" and (3) "all of the foregoing have caused Plaintiffs to sustain a loss of their quality of life and severe emotional distress." *Am. Compl.* [#20] ¶ 22.  They additionally allege, with regards to their claim of outrageous conduct, that "Defendants' [sic] conduct caused [ ] Plaintiffs severe emotional distress that was a real injury manifested by physical symptoms." *Id.* ¶ 43. Plaintiffs lastly allege that they "suffered a loss of their contract rights under the [N]ote and [D]eed of [T]rust to reasonable loss mitigation, attorneys['] fees in connection with their bankruptcy, loss of quality of life through their difficult bankruptcy repayment plan and severe emotional distress." *Id.* ¶ 48.  These allegations are sufficient to sustain a claim that real injury has occurred. *See Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 255 (1st Cir. 2010) (holding any economic injury would have been sufficient to show damages).

### 5. Causation

Although the Amended Complaint contains, at various points, sufficient allegations that damages have occurred, the Complaint fails to clearly allege that these injuries were caused by Defendant's purportedly deceptive representations about its compliance with the HUD Regulations.  The Complaint instead seems to allege that Defendant's "nationwide and statewide pattern of conduct" has led to Plaintiffs' loss of a protected interest. *Am. Compl.* [#20] ¶ 47-48.  Interpreting Plaintiffs' allegations in the light most favorable to their claims, Plaintiffs' alleged injuries may stem from the alleged breach of contract. *See Adickes*, 398 U.S. at 157 (1970); *Celotex*, 477 U.S. at 324.  However, the Court has already determined that this alleged breach of contract does not meet the first requirement of a CCPA claim.

Having failed to sufficiently allege each element of a CCPA claim, the Court respectfully recommends that Plaintiffs' Sixth Claim be **dismissed without prejudice**. *Reynoldson*, 907 F.2d at 127(prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues"); *compare Dawson*, 2013 WL 1283848, at *4, *and Weigel*, 2011 WL 1135319, at *5, *with Gen. Steel Domestic Sales*, 230 P.3d at 1282 *and Paul*, 2003 WL 24199540, at *5.

### IV.  Recommendation for Dismissal

Accordingly, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED in part and DENIED in part**, and that Claims One and Two be retained, Claims Three, Four, and Six be **DISMISSED without prejudice**, and Claim Five be **DISMISSED with prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 17, 2013          BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge