**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02600-CMA-KLM

EUGENE CHRISTENSON, and
SHARON CHRISTENSON,

    Plaintiffs,

v.

CITIMORTGAGE, INC.,

    Defendant.

---

**ORDER ADOPTING AND AFFIRMING IN PART AND REJECTING IN PART
JUNE 17, 2013 RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This case was referred to United States Magistrate Judge Kristen L. Mix pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72. (Doc. # 6.) On June 17, 2013, Judge Mix issued a Recommendation, advising the Court to grant in part and deny in part the Motion to Dismiss filed by Defendant Citimortgage, Inc. (Doc. # 23). (Doc. # 30.) Specifically, she recommended that: Claims One and Two alleged by Plaintiffs Eugene and Sharon Christenson be retained; Claims Three, Four, and Six be dismissed without prejudice; and Claim Five be dismissed with prejudice. (*Id.* at 39.) The Recommendation stated that "the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned." (*Id.*) It further informed the parties that "failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge." (*Id.*) Although Plaintiffs

did not file any objections, Defendant did – but only as to Claims One and Two. (Doc. # 31.)[1] In reviewing Judge Mix's recommended disposition as to Claims Three through Six, the Court discerns no clear error on the face of the record and finds that Judge Mix's reasoning is sound. Accordingly, the Court will dismiss those claims without further analysis. Regarding Claims One and Two, for the reasons that follow the Court disagrees with the Recommendation as to those claims.

## I. **BACKGROUND**[2]

On April 20, 2009, Plaintiffs executed a promissory note (the "Note") with Ascent Home Loans, Inc. (Doc. # 23-1.) To secure the Note, Plaintiffs executed an April 20, 2009 deed of trust ("Deed of Trust"), which encumbers their real property located in Grand Junction, Colorado. (Doc. # 23-2.) The note and deed of trust are held by Defendant, which is a mortgage servicer. (Doc. # 20 at 2.) The Note discusses a borrower's failure to pay by stating:

> If borrower defaults by failing to pay in full any monthly payment, then Lender may, *except as limited by regulations of the Secretary* in case of payment defaults, require immediate payment of the full principal balance remaining due and all accrued interest. Lender may choose to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. *This Note does not authorize acceleration when not permitted by HUD regulations.* As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(Doc. # 23-1 at 3 (emphasis added).) The Deed of Trust states, in pertinent part:

---

[1] Plaintiffs responded to Defendant's objections on July 17, 2013. (Doc. # 32.)

[2] The facts underlying Judge Mix's analysis are fully set forth in her Recommendation. (Doc. # 30.) Here, the Court will recite only those facts relevant to the instant Order.

> 9. (a) Default. Lender may, *except as limited by regulation issued by the Secretary* in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . .
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. **This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.**

(Doc. # 23-2 at 4 (emphasis added).)

At all times relevant to this case, the Department of Housing and Urban Development ("HUD") had in place regulations in the Code of Federal Regulations which, as Judge Mix pointed out, "have the effect of law." (Doc. # 30 at 3 (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979)).) Those regulations are as follows:

- 24 CFR § 203.500 which, among other things, provides that "it is the intent of the Department that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed."

- 24 CFR § 203.501 which states: "Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department. Such actions include, but are not limited to, deeds in lieu of foreclosure under § 203.357, pre-foreclosure sales under § 203.370, partial claims under § 203.414, assumptions under § 203.512, special forbearance under §§ 203.471 and 203.614, and recasting of mortgages under § 203.616. HUD may prescribe conditions and requirements for the appropriate use of these loss mitigation actions, concerning such matters as owner-occupancy, extent of previous defaults, prior use of loss mitigation, and evaluation of the mortgagor's income, credit and property."

- 24 CFR § 203.600 which says: "Subject to the requirements of this subpart, mortgagees shall take prompt action to collect amounts due from mortgagors to minimize the number of accounts in a delinquent or default status. Collection techniques must be adapted to individual differences in mortgagors and take account of the circumstances peculiar to each mortgagor."

- 24 CFR § 203.605 which, in subsection (a), provides: "Duty to mitigate. Before four full monthly installments due on the mortgage have become unpaid, the mortgagee shall evaluate on a monthly basis all of the loss mitigation techniques

3

- provided at § 203.501 to determine which is appropriate.  Based upon such evaluations, the mortgagee shall take the appropriate loss mitigation action.  Documentation must be maintained for the initial and all subsequent evaluations and resulting loss mitigation actions.  Should a claim for mortgage insurance benefits later be filed, the mortgagee shall maintain this documentation in the claim review file under the requirements of § 203.365(c)."

- 24 CFR § 203.606 which, also in subsection (a), states: "Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of this subpart have been met.  The mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account.  In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the Secretary that the mortgagor is in default and the mortgagee intends to foreclose unless the mortgagor cures the default."

(Doc. # 20 at 4-5.)  Plaintiffs assert that these regulations (cumulatively, the "HUD Regulations") were incorporated into the contract between them and Defendant by the above-cited contract language of the Deed of Trust.  (*Id.* at 3.)

Plaintiffs admit that they are in default under the Note and Deed of Trust by failing to make timely monthly payments.  (*Id.*)  However, Plaintiffs allege that when they became unable to make their payments, they contacted Defendant and its legal counsel numerous times, attempting to have Defendant engage in loss mitigation as contemplated in the Deed of Trust.  (*Id.* at 5.)  All to no avail, according to Plaintiffs.  They allege that Defendant refused to cooperate and then "accelerated the balance and instituted foreclosure and hired attorneys to effectuate a trustee sale under the [D]eed of [T]rust under Colorado's expedited non-judicial foreclosure process."  (*Id.*)  On March 31, 2011, Plaintiffs sent Defendant a letter (Doc. # 23-3), which will be discussed more fully below.  Defendant failed to reply.  (Doc. # 20 at 9.)  On June

4

28, 2011, Plaintiffs filed for Chapter 13 bankruptcy, which stopped the foreclosure proceedings by virtue of the automatic bankruptcy stay. (*Id.* at 6.) On October 1, 2012, this suit followed. (Doc. # 1.) As relevant here, Plaintiffs seek: money damages "together with attorneys fees" and "costs herein expended" pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (e) and (f); and an injunction and money damages regarding Plaintiffs' claim for breach of contract. (Doc. # 20 at 8-13.)

## II. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* Accordingly, the Court has conducted a *de novo* review of this matter, including carefully reviewing all relevant pleadings, the Recommendation, Defendant's objections, and Plaintiffs' response thereto. In doing so, the Court has applied the same Fed. R. Civ. P. 12(b)(6) standard as did Judge Mix. (*See* Doc. # 30 at 6-7.)

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### III. DISCUSSION

**A. CLAIM ONE: RESPA**

In their first claim, Plaintiffs assert that Defendant violated RESPA by failing to respond to their March 31, 2011 letter, which they contend was a Qualified Written Request ("QWR") under RESPA. On this issue Judge Mix determined that Plaintiffs had validly stated a claim. (*See* Doc. # 30 at 16.) In its objections, Defendant argues that

the Magistrate Judge interpreted too broadly the term "servicing" and, therefore, Plaintiffs' RESPA claim should be dismissed.  The Court agrees with Defendant's objection.

Congress enacted RESPA, 12 U.S.C. §§ 2601-2617, as a consumer protection statute "to regulate real estate settlement processes."  *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1145 (10th Cir. 2013).  The purpose of RESPA is to "make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans."  *Henson v. Bank of Am.*, --- F. Supp. 2d ----, 2013 WL 1222095, at *12 (D. Colo. Mar. 25, 2013) (citing 12 U.S.C. § 2601(a)).  Under RESPA, a servicer of a "federally related mortgage loan," as Defendant is here, "may be liable for damages to a borrower if it fails to adequately respond" to a QWR.  *Berneike*, 708 F.3d at 1145 (citing 12 U.S.C. § 2605(e)–(f)).  When a loan servicer receives a QWR, it must provide a written response within five days of the borrower's inquiry acknowledging receipt of the QWR.  12 U.S.C. § 2605(e)(1)(A).  Within thirty days of receiving the QWR, the servicer "generally must investigate and make appropriate corrections to the borrower's account, provide a written notification of any correction or an explanation why no correction was necessary, and provide a contact number for a representative" *Berneike*, 708 F.3d at 1145 (citing 12 U.S.C. § 2605(e)(2)).[3]  If the servicer fails to respond appropriately, the borrower may recover actual damages resulting from such failure and "any additional damages . . . in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  12 U.S.C. § 2605(f).

---

[3] A prior version of § 2605 allowed twenty days for the servicer to respond and sixty days for it to make corrections.  *See* Pub. L. 111-203, 2010 HR 4173.

To trigger the duty of a servicer to respond, a QWR must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower" and "include[ ] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." *Id.* at § 2605(e)(1)(B). Further, "a letter cannot be 'qualified' under the statute if it does not relate to the servicing of the account." *Harris v. Am. Gen. Fin., Inc.*, No. Civ.A. 02-1395, 2005 WL 1593673, at *3 (D. Kan. July 6, 2005) (unpublished). The statute defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). "Queries that essentially call for, or dispute, an interpretation of the underlying loan agreement do not constitute a qualified written request." *Henson*, 2013 WL 1222095 at *12. Nor do inquiries regarding loss mitigation or loan modification. *See Beacham v. Bank of Am., N.A.*, No. 3:12-CV-00801-G, 2012 WL 2358299, at *3 (N.D. Tex. May 25, 2012) (unpublished) ("Requesting information regarding loss mitigation review does not relate to 'servicing' of a loan as provided in 2605(i)(3)."); *Yakowicz v. BAC Home Loans Servicing, LP*, No. 12-1180, 2013 WL 593902, at *5 (D. Minn. Feb. 15, 2013) (unpublished) (letters seeking loan modification "do not constitute QWRs"); *Van Egmond v. Wells Fargo Home Mortg.*, No. SACV 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (unpublished) (similar); *In re Salvador*, 456 B.R. 610, 623 (Bankr. M.D. Ga. 2011) (similar); *Williams v. Wells Fargo*

*Bank, N.A., Inc.*, No. C 10-00399, 2010 WL 1463521, at *3 (N.D. Cal. April 13, 2010) (unpublished) (similar).

As previously mentioned, Plaintiffs sent Defendant a letter on March 31, 2011. (Doc. # 23-3.)  The body of the letter states, in full:

> Please consider this a formal written inquiry under 12 U.S.C. § 2605(e).  The loan may be identified by the information provided above.  I believe my account is in error for the following reasons.
>
> We love our home and desperately want to keep it.  We called right away after we couldn't make the payments asking for help.  We called you a lot after that asking for help.  Despite our pleas you have just accelerated our note and deed of trust and placed us in foreclosure.  As this is an FHA loan with standard FHA loan documents, our loan documents clearly indicate that this may not occur until you engaged in substantial loss mitigation activities.  Gene was laid off from the railroad but we always anticipated he would be called back.  We have been receiving unemployment and have a lawsuit that might settle from which we could potentially catch up.  Gene is now being called back to work and we could make some decent payments if you would work with us as required by FHA.  All along nobody even asked our circumstances.  Please correct our account by removing us from foreclosure, cancelling the purported acceleration and begin discussing options with us in good faith that would save our home.
>
> Along these lines we have a series of questions related to the servicing of our account:
>
> 1.     What loss mitigation activities such as recasting (24 CFR § 203.616) or special forbearance (24 CFR §§ 203.471 and 203.614) do you claim you have done since we first started falling behind in 2010?  When did you do these?
>
> 2.     Pursuant to 24 C.F.R. § 203.605 or otherwise what have you done on a monthly basis to evaluate "all of the loss mitigation techniques provided" by the regulations[?]
>
> 3.     What evaluation of your loss mitigation did you do as required by 24 C.F.R. § 203.606 before accelerating our loan and putting us in foreclosure[?]
>
> 4.     With all of our calls why did we never have a consultation interview to discuss our options to save our home per 24 CFR § 203.508?

5. We were taken to Court in Mesa County for a Rule 120 Motion. We filed briefs in a state Court matter where you asked the judge to authorize the sale of our home. When your lawyer had full knowledge of our claim that you just avoided loss mitigation, instead of fixing the problem she told our lawyer and argued to the judge that the Court could not consider this in a "Rule 120" matter and that we would need to file yet a separate lawsuit to consider for loss mitigation. Why didn't you just try to correct this problem by considering our circumstances instead?

6. Why do we have to go to court to get you to see we were never considered for loss mitigation such as recasting or special forbearance?

> We ask pursuant to 12 U.S.C. § 2605(e)(2) that [you] correct this account by setting aside the acceleration, removing us from foreclosure and considering all loss mitigation options with us. Also, provide all explanations required by the statute.

(Doc. # 23-3.)

The Court agrees with Defendant that Plaintiffs' letter did not request information relating to the servicing of their loan. (Doc. # 31 at 4.) Instead, as Judge Mix noted, "the majority of Plaintiffs' Letter plainly concerns loss mitigation." (Doc. # 30 at 13.) Although Plaintiffs' couched their letter as a "formal written inquiry under 12 U.S.C. § 2605(e)," nearly every paragraph of the letter concerns loss mitigation which, as the aforementioned authorities indicate, precludes the letter from being a qualified written request. Additionally, those parts of the letter that do not directly raise loss mitigation issues likewise fail to relate to the servicing of Plaintiffs' account. For example, Plaintiffs ask: "why did we never have a consultation interview to discuss our options to save our home per 24 CFR § 203.508?" (Doc. # 23-3.) Such an interview does not relate to receiving scheduled periodic payments from a borrower or making principal and interest payments on the borrower's behalf.

Similarly, the closing paragraph in the letter, in which Plaintiffs request Defendant to correct their account, set aside the acceleration, and remove Plaintiffs from foreclosure (*id.*), is insufficient to convert the letter into a QWR. Generally requesting an account correction, without explaining how the account is in error, does not suffice under the statute. *See* 12 U.S.C. § 2605(e)(1)(B); *In re Brewster*, No. 5:13-cv-505, 2013 WL 4833707, at *4 (C.D. Cal. Sept. 9, 2013) (unpublished) (noting that documents which "generally seek information on the validity of the loan . . . do not fall within the

confines of RESPA"). Nor does servicing under 12 U.S.C. § 2605(i)(3) encompass acceleration or foreclosure issues. On this point, Judge Mix relied on *McVay v. Western Plains Service Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987) to determine that "servicing may include the right to 'make decisions concerning acceleration, foreclosure, redemption and deficiencies.'" (Doc. # 30 at 13 (quoting *McVay*).) However, the Court agrees with Defendant that *McVay* is inapplicable in this case. The *McVay* court was describing what a holder of a note and a loan servicer may include in a participation agreement they enter. *See* 823 F.2d at 1398. The court did not address RESPA and, thus, its commentary was not aimed at defining, or for that matter expanding, the term "servicing" under 12 U.S.C. § 2605(i)(3). *Id.* Moreover, if the Court were to have to look beyond non-RESPA cases to define "servicing," it would note the Supreme Court has explained that "servicing" merely comprises "the administrative tasks associated with collecting mortgage payments." *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869, 2875 (2010). By contrast, acceleration is "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately[,]" while foreclosure is a "legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." Black's Law Dictionary (9th ed. 2009). As such, "'servicing' is not an umbrella term" that includes acceleration or foreclosure. *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1259 (D. Or. 2012) (citing cases addressing RESPA).

Accordingly, the Court determines that Plaintiffs' March 31, 2011 letter was not a QWR and, therefore, Plaintiffs' RESPA claim will be dismissed.

## B. CLAIM TWO: BREACH OF CONTRACT

In their second claim, Plaintiffs' contend that Defendant breached the Deed of Trust by foreclosing on the Property without complying with certain HUD regulations.[4] On this issue, Judge Mix determined that: (1) the claim was not mooted by virtue of the bankruptcy-imposed stay on the foreclosure; (2) "the language of the Deed of Trust incorporates the duties outlined in the HUD Regulations," thereby allowing Plaintiffs to "pursue a claim for breach of contract" stemming from an alleged violation of these Regulations; and (3) Plaintiffs sufficiently pled the elements of their breach of contract claim. (Doc. # 30 at 16-25.) Defendant, in its objections, argues only that "the HUD regulations are a condition to acceleration and foreclosure and do not provide an affirmative action for damages."[5] (Doc. # 31 at 7 (emphasis and capitalization deleted).) The Court agrees with Defendant's analysis of this issue.

To begin with, the HUD Regulations do not, on their own, establish a private cause of action. *Anderson v. U.S. Dept. of Housing and Urban Dev.*, 701 F.2d 112, 114 (10th Cir. 1983). Additionally, although some courts have determined that the HUD Regulations become enforceable by a private cause of action if they are incorporated

---

[4] Specifically, Plaintiffs assert that the Deed of Trust incorporated the HUD Regulations. For instance, paragraph 9(d) of the Deed of Trust states, in part, that "regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." (Doc. # 23-2 at 4.) Plaintiffs point to 24 CFR § 203.501, which is set forth in the text above, as one of the regulations incorporated into the Deed of Trust.

[5] Defendant objects to neither Judge Mix's mootness analysis nor to her determination that Plaintiffs' breach of contract claim was well-pled. (*See* Doc. # 31 at 7-12.) In reviewing the Recommendation as to the former issue, the Court discerns no clear error on the face of the record and, in fact, agrees with Judge's Mix's reasoning. The Court declines to address the latter issue, which would arise only if violation of the HUD Regulations were to create a private cause of action.

into a mortgagor's loan documents, those courts represent the minority position. *Compare In re Shelton*, 481 B.R. 22, 28-30 (Bankr. W.D. Mo. 2012), *Sinclair v. Donovan*, Nos. 11-CV-00010, 11-CV-00079, 2011 WL 5326093 (S.D. Ohio Nov. 4, 2011) (unpublished), *Mullins v. GMAC Mortg., LLC*, No. 09-cv-00704, 2011 WL 1298777 (S.D.W.Va. Mar. 31, 2011) (unpublished), and *Kersey v. PHH Mortg. Corp.*, 682 F. Supp. 2d 588, 596-97 (E.D. Va. 2010), *opinion vacated* (Aug. 13, 2010), *with Urenia v. Public Storage*, No. CV 13-01934, 2013 WL 4536562 (C.D. Cal. Aug. 27, 2013) (unpublished), *Pfeifer v. Countrywide Home Loans, Inc.*, 211 Cal. App. 4th 1250 (2012), *Dixon v. Wells Fargo Bank, N.A.*, No. 12-10174, 2012 WL 4450502 (E.D. Mich. Sept. 25, 2012) (unpublished), *Lacy-McKinney v. Taylor, Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 864 (Ind. Ct. App. 2010), *McHatten v. Chase Home Fin., LLC*, No. CV 03-1094, 2010 WL 3882587, at *6-7 (D. Ariz. Sept. 29, 2010) (unpublished); *Mitchell v. Chase Home Fin. LLC*, No. 3:06-cv-2099, 2008 WL 623395 (N.D. Tex. Mar. 4, 2008) (unpublished), *Wells Fargo Home Mortg., Indc. v. Neal*, 922 A.2d 538, 543-44 (Md. 2007), *Washington Mut. Bank v. Mahaffey*, 796 N.E.2d 39, 42-44 (Ohio Ct. App. 2003), *Fed. Land Bank of St. Paul v. Overboe*, 404 N.W.2d 445, 449 (N.D. 1987), *Fleet Real Estate Funding Corp. v. Smith*, 530 A.2d 919, 922-23 (Pa. Super. Ct. 1987), *Bankers Life Co. v. Denton*, 458 N.E.2d 203, 205 (Ill. App. Ct. 1983).

The Court agrees with the majority view that compliance with the HUD regulations is a condition which must occur prior to the lender being able to accelerate and foreclose the debt and that the borrower may use any failure to comply with the regulations "as a shield in the subsequent foreclosure case." *BAC Home Loans Servicing, LP v. Taylor*, 986 N.E.2d 1028, 1035 (Ohio Ct. App. 2013). As Defendant

14

points out in its objections, a condition "may be an event or action that must happen before a contractual right accrues." (Doc. # 31 at 11 (citing *M West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 842 (Kan. App. 2010) ("[c]onditions precedent to performance under an existing contract . . . define an event that must occur before a right or obligation matures under the contract")).) "Nonoccurrence of a condition prevents the promisee from acquiring a right, or deprives it of one, but subjects it to no liability." 13 Williston on Contracts § 38:5 (4th ed. 2000). Here, the language of the Deed of Trust states that the HUD Regulations "will limit Lender's rights" and, therefore, Defendant's failure to abide by such limitation precludes its ability to accelerate and foreclose upon the debt. Accordingly, construing the Deed of Trust's reference to the HUD Regulations as a condition to Defendant commencing foreclosure, the Court determines that Plaintiffs may use the failure of such condition as an affirmative defense but may not use it as the basis for an affirmative breach of contract claim. As such, the Court will dismiss Plaintiffs' Second Claim.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the June 17, 2013 Recommendation of United States Magistrate Judge Kristen L. Mix (Doc. # 30) is ADOPTED AND AFFIRMED in part as to Claims Three through Six and REJECTED in part as to Claims One and Two. Pursuant to the Recommendation, it is

ORDERED THAT Claims Three, Four, and Six are DISMISSED WITHOUT PREJUDICE, and Claim Five is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that Claims One and Two are DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that, should Plaintiff wish to file an Amended Complaint with respect to Claims Three, Four, and Six, an Amended Complaint shall be filed **no later than Friday, October, 18, 2013**.  If an Amended Complaint is not filed by October 18, 2013, this case shall be closed in its entirety.

DATED:  September   18  , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge