Case 1:12-cv-02600-CMA-KLM   Document 50   Filed 09/16/14   USDC Colorado   Page 1 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 12-cv-02600-CMA-KLM

EUGENE CHRISTENSON, and
SHARON CHRISTENSON,

    Plaintiffs,

v.

CITIMORTGAGE, INC.,

    Defendant.

---

**ORDER DENYING MOTION FOR RECONSIDERATION, AND DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**

---

This case revolves around a letter Plaintiffs Eugene and Sharon Christenson sent to Defendant Citimortgage on March 31, 2011. Defendant is a mortgage servicer that also holds the note securing the mortgage on Plaintiffs' home. In the letter, Plaintiffs, who had fallen behind on their mortgage payments, asked Defendant whether it had considered certain loss mitigation measures to avoid a foreclosure. Defendant never responded to the letter, which Plaintiffs allege violated a number state and federal laws. In a prior order, this Court determined that Plaintiffs had provided insufficient support to substantiate any legal claim. Plaintiffs have tried again in a second amended complaint. This time, the Court concludes at least one state-law claim is sufficiently

pled to survive Defendant's second motion to dismiss. At the same time, the other two claims still fail, for largely the same reasons stated in this Court's original order.[1]

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted; alterations incorporated)).

Further, "only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted; alterations incorporated). Thus, the burden is on the

---

[1] This Court will not recite the factual and procedural background of this case, as the parties are familiar with it and it has been described at length in prior proceedings. *See Christenson v. Citimortgage, Inc.*, No. 12-CV-02600-CMA-KLM, 2013 WL 5291947 (D. Colo. Sept. 18, 2013) (affirming in part and rejecting in part *Christenson v. Citimortgage, Inc.*, No. 12-CV-02600-CMA-KLM, 2013 WL 5291943 (D. Colo. June 17, 2013)).

Plaintiffs to "nudge [their] claims across the line from conceivable to plausible." T*wombly*, 550 U.S. at 570.

The purpose of this pleading requirement is two-fold: "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (internal quotation marks and citations omitted).

The Court applies this standard to the three claims on which the parties seek this Court's further review.

## II. ANALYSIS

### A. MOTION FOR RECONSIDERATION OF RESPA CLAIM

First, Plaintiffs allege that when Defendant failed to respond to the March 2011 letter, it violated 12 U.S.C. § 2605(e)(1)(A) of the Real Estate Settlement Procedures Act (RESPA). This statute requires Defendant to provide a written response to "a qualified written request [QWR[2]] from [a] borrower . . . for information relating to the servicing of [a] loan." In the prior order, this Court determined that a letter inquiring about efforts at loss mitigation does not qualify as a QWR for purposes of this portion of RESPA.

---

[2] A QWR must include certain identifying information about the borrower and a statement particularizing the borrowers' need for the requested information. *See* 12 U.S.C.A. § 2605(e)(1)(B)(i), (ii). These provisions—and their scope—are irrelevant for purposes of resolving the instant claim.

3

Plaintiffs ask this Court to reconsider this decision based on their discovery of a new authority: a regulation issued by the Consumer Financial Protection Bureau (CFPB), concerning "error resolution procedures" related to loan servicers. 12 C.F.R. § 1024.35. In pertinent part, this regulation requires a "servicer" to respond to a QWR identifying certain "errors," including the "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by [12 C.F.R.] § 1024.39." 12 C.F.R. § 1024.35(b)(7).

Plaintiffs argue that because the **regulation** requiring responses to **QWRs related to alleged errors** encompasses those related to the failure to provide information regarding loss mitigation, it must follow that this Court should interpret the separate **statute** mandating responses to QWRs related to loan servicing to include queries about loss mitigation.

Plaintiffs' argument fails because it conflates one **statutory mandate** for QWRs related to loan servicing ("loan-servicing QWRs") with a **separate regulatory mandate** based on a later-enacted statute that governs QWRs related to the above-mentioned list of errors ("error-resolution QWRs"). *Cf. Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 & n.4 (9th Cir. 2012) (noting how many courts conflate QWRs related to loan servicing with other forms of QWRs), *cert. denied*, 133 S. Ct. 2800 (2013).

In short, all QWRs are not the same and this is a case about only **loan-servicing QWRs**. As noted above, to trigger the loan-servicing QWR mandate, a borrower must file a QWR that seeks "information relating to the **servicing** of a loan." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). In the prior order, this Court interpreted the term

4

"servicing" as used in this section not to include inquiries about loss mitigation. *See Christenson*, 2013 WL 5291947, at *4-5. The Court will not reiterate its reasoning for adopting such an interpretation of "servicing" but the analysis from that order clearly shows that what drove the Court's interpretation of the word "servicing" had nothing to do with the separate (and largely irrelevant) question about what constitutes a QWR.

Further, nothing in the **regulation** that Plaintiffs have found affects the way this Court interprets the word "servicing" in the prior order. Indeed, the error-resolution QWR regulation derives from a different part of RESPA, which mandates that servicers provide responses to much broader and varied types of requests: that other part of RESPA prohibits a servicer from failing to "to take timely action to respond to a borrower's **requests to correct errors relating** to allocation of payments, final balances for purposes of paying off the loan, **or avoiding foreclosure**, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C) (emphasis added).

Congress added this separate part of RESPA pursuant to the Dodd-Frank Act, Pub. L. No. 111-203, § 1463, 124 Stat 1376, 2182-83 (2010). Only after the statute was enacted in 2010 did the CFPB start to solicit comments for how it should interpret the types of errors that should be included as ones that Plaintiffs needed to provide a "timely" response. The result is 12 C.F.R. § 1024.35, which includes the aforementioned prohibition against providing inaccurate information about loss-mitigation efforts relied upon by Plaintiffs.[3]

---

[3] That Congress and the CFPB sought to differentiate between the loan-servicing and error-resolution QWRs rules is readily apparent from a review of the different procedural rules used for each type of QWR. For example, the rules governing when a servicer must respond to these

Plaintiffs ignore the legislative and regulatory provenance of 12 C.F.R. § 1024.35, and they fail to even make an argument about the issue central to changing this Court's opinion about their RESPA claim: namely, how 12 C.F.R. § 1024.35 should change this Court's interpretation of the term "servicing." Further, because Plaintiffs do not even **cite** 12 U.S.C. § 2605(k)(1)(C) in their briefing, they have forfeited any argument that this Court should reinterpret that separate statute's mandate as affecting this Court's interpretation of 12 U.S.C. § 2605(e)(1)(A).

In sum, Plaintiffs' new authority would be helpful if they were raising an argument about whether their inquiry constituted an error-resolution QWR. But it is unhelpful here because this is a case about loan-servicing QWRs.[4]

---

two different types of QWRs are different. On the one hand, a servicer must acknowledge receipt of a loan-servicing QWR not later five days after receiving it, *see* § 12 U.S.C. § 2605(e)(1)(A), and respond to the QWR not later than thirty days after receipt, *see* § 12 U.S.C. § 2605(e)(2), unless the servicer asks the borrower for an extension and explains the reasons for the delayed response, *see id.* § 2605(e)(4). On the other hand, for the error-resolution QWRs, the statute requires servicers to take "timely action" in responding. *Id.* § 2605(k)(1)(C). The CFPB has interpreted "timely action" to somewhat track the timeline for loan-servicing QWRs, with some types of alleged errors requiring a response within seven days, *see* 12 C.F.R. § 1024.35(e)(3)(i)(A), and others requiring response within the same thirty-day period, *id.* § 1024.35(e)(3)(i)(C). The extension-of-time regime under the error-resolution regulation also somewhat tracks—but does not mirror—the regime for loan-servicing QWRs. *Compare, e.g.*, 12 U.S.C. § 1024.35(e)(3)(ii) (allowing extensions only for certain types of error-resolution QWRs), *with* 12 U.S.C. § 2605(e)(4) (allowing a fifteen-day extension for all types of loan-servicing QWRs).

[4] Defendant advances a number of arguments for why Plaintiffs have forfeited any argument that relies on 12 C.F.R. § 1024.35, as this authority was available to Plaintiffs at the time they were responding to the original motion to dismiss. This Court need not reach any of these forfeiture arguments: for the reasons stated above, on the merits, Plaintiffs' newly discovered authority has no impact on this Court's original interpretation of 12 U.S.C. § 2605(e)(1)(A).

### B.     COLORADO REVISED STATUTE § 38-40-103

Plaintiffs also allege that Defendant's failure to respond to the March 2011 letter constituted a violation of Colorado Revised Statute § 38-40-103.  This statute states in relevant part: "The servicer of a loan shall respond in writing within twenty days from the receipt of a written request from the debtor . . . for information concerning the debtor's loan, which is readily available to the servicer from its books and records and which would not constitute the rendering of legal advice."  Colo. Rev. Stat. § 38-40-103(2).  It provides a cause of action for those who can show "actual damages have occurred" as a result of the violation.  Colo. Rev. Stat. § 38-40-104(1).

This Court granted Defendant's motion to dismiss this claim without prejudice based on Plaintiffs' failure to plead with sufficient specificity that the answers to the questions raised by Plaintiffs were "readily available" as that term is used in the statute. *Christenson*, 2013 WL 5291943, at *15-16.  Plaintiffs have filed an amended complaint attempting to rectify this deficiency, and Defendant renews its motion to dismiss, advancing a number of arguments for why, notwithstanding the amendment, the complaint is still deficient.  This time, Defendant's arguments all fail—at least for purposes of the motion to dismiss.

First, Defendant argues that it is not a "servicer" for purposes of § 38-40-103(2) because Colorado law does not include in the definition of "servicer" those entities that **both** hold an underlying promissory note for a mortgage and manage the payments on that note.  Defendant does not support its argument with any common-sense explanation as to why the Colorado legislature would exempt from a law regulating

7

"servicers" those entities that also happened to hold the note they are servicing. Rather, Defendant points to two portions of the Colorado Revised Statutes that appear to assume that servicers are entities separate and apart from note holders: the first authority states that "'[s]ervicer' means a person who collects . . . payments **on behalf of a holder**," Colo. Rev. Stat. § 38-40-103.5(e)(I) (emphasis added), and the second applies certain requirements on "[a]ny person who regularly engages in the collection of payments on mortgages and deeds of trust for **owners of evidences of debt**," *Id.* § 38-40-103(1)(a)(I) (emphasis added).

Defendant's argument fails because its reliance on these authorities is misplaced. The first authority does define servicer as a person who collects payments "on behalf of a holder," but the very next provision states that the definition of servicer "**includes**: [t]he person or entity to whom payments are to be sent, as listed on the most recent billing statement or payment coupon provided to the borrower." Colo. Rev. Stat. § 38-40-103.5(e)(II)(A). Defendant does not dispute that it is "the person or entity to whom payments" for Plaintiffs' mortgage "[we]re sent." Defendant is therefore "include[d]" in the definition of servicer for purposes of § 38-40-103(3).

Further, the scope of the actors regulated by Defendant's second authority, Colo. Rev. Stat. § 38-40-103(1)(a)(I), is irrelevant for present purposes. To be sure, that authority regulates collectors who work for "owners of evidences of debt;" but the statute at issue in this case specifically applies to the "**servicer** of a loan." Colo. Rev. Stat. § 38-40-103(2). Plaintiffs do not appear to bring a claim under Colo. Rev. Stat. § 38-40-

103(1)(a)(I),[5] and for the reasons just explained, the definition of servicer in § 38-40-103(3) includes those, like Defendant, who are sent mortgage payments.[6]

Next, Defendant argues that this Court should interpret § 38-40-103 as co-extensive in scope with the federal RESPA. Thus, because this Court has determined that the failure to respond to an inquiry related to loss mitigation does not constitute a violation of the federal RESPA, Defendant argues that the same should hold true for violations of Colorado's version of the same law.

This argument fails for a number of reasons. As an initial matter, Defendant cites no authority for its position that the Colorado legislature intended § 38-40-103(2) to perfectly mirror RESPA. Further, the language in the Colorado statute—which, again, requires Defendant to respond to a request "for information concerning the debtor's loan"—is more expansive than the language in RESPA in that it does not limit inquiries that require a response to those relating to the "servicing" of the loan, as that term is more narrowly defined in RESPA. Finally, a question about loan mitigation is plausibly for information "concerning the . . . loan" under the broadly-worded Colorado statute.

---

[5] Plaintiffs reference § 38-40-103(1)(a)(I) at one point in the amended complaint (Doc. # 36, ¶ 19), but the thrust of the briefing and analysis in the complaint focuses § 38-40-103(2).

[6] Defendant suggests that this construction violates the canon against surplusage because it renders superfluous the language "on behalf of the holder" in § 38-40-103.5(e)(I). This argument also fails. The "preference for avoiding surplusage constructions is not absolute." *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004). Further, "the canon against surplusage has substantially less force when it comes to interpreting a broad residual clause." *Begay v. United States*, 553 U.S. 137, 153 (2008) (Scalia, J., concurring). Here, this Court will not blindly obey this statutory-interpretation canon in order to create a loophole for mortgage servicers who are also holders of notes, especially when the Colorado legislature, in a provision that comes just after the "on behalf" language, appended a commonsense additional definition that "includes" all entities that "are to be sent" mortgage payments. Colo. Rev. Stat. § 38-40-103.5(e)(II)(A). This residual catch-all definition takes all the force out of Defendant's surplusage argument.

Lastly, Defendant suggests that Plaintiffs' Colorado RESPA claim fails because the information requested was not "readily available to the servicer" or would require a response that constituted "the rendering of legal advice." Defendant makes a related argument that Plaintiffs' claim fails because they cannot meet their burden, pursuant to Colo. Rev. Stat. § 38-40-104(1), of showing that they suffered "actual damages" as the result of the failure to respond.

All of these arguments fail for purposes of the motion to dismiss—where Plaintiffs need only deploy enough factual support to "nudge [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. First, Plaintiffs have plausibly stated that the information Plaintiffs requested was readily available and would not constitute legal advice: Plaintiffs have alleged (and Defendant does not dispute) that Defendant had access to the regulations for FHA loans referenced in Plaintiffs' letter.

Further, Plaintiffs have plausibly suggested that the answer to the principal question Plaintiffs asked—"have you engaged in loss mitigation?"—was a simple one-word response—"no,"—that could have been easily provided. Finally, Plaintiffs have plausibly stated that a forthright "no" from Defendant might have stopped or changed the outcome of their foreclosure: as Plaintiffs allege, a "no" response would have constituted a plausible violation of the terms of Plaintiffs' FHA-backed loan and might have forced Defendant to change course from pursuing a foreclosure, rather than openly admit to the potential regulatory violation.

To be sure, Defendant raises good arguments that might undermine Plaintiffs' position for why this claim could ultimately survive a motion for summary judgment.

For example, Defendant notes that it is uncertain that a simple response of "no" to Plaintiffs' questions about loss mitigation would have would have forced Defendant to alter from their plan of foreclosing on Plaintiffs' home. Defendant also points to the fact that many of the damages allegedly caused by the failure to respond might be more properly attributed to the entirety of the foreclosure proceeding and other financial stresses Plaintiffs were enduring at the time.

These arguments may present problems for Plaintiffs on summary judgment. Nevertheless, at this early stage of the proceedings, discovery is needed to determine how the plausible counterfactual suggested by Plaintiffs could have unfolded.

### C.   COLORADO CONSUMER PROTECTION ACT

Plaintiffs have also amended their claim under the Colorado Consumer Protection Act (CCPA). To plead a claim under the CCPA, Plaintiffs must in part allege Defendant "engaged in an unfair or deceptive trade practice." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 146–47 (Colo. 2003). On review of this claim in considering the first motion to dismiss, this Court determined that it failed because Plaintiffs had not sufficiently explained how Defendant's conduct was deceptive in nature. *Christenson*, 2013 WL 5291943, at *19-20. Now, the problem seems to be quite the opposite: Plaintiffs have advanced a hydra-headed theory of the Defendant's deceptive practices that this Court does not comprehend.

The Court has lost count as to how many different potential aspects there are to Plaintiffs' theory of Defendant's deception. First, Defendant is deceptive by employing maneuvers "both by affirmative statement and omission, that enables it to take people's

homes, utilizing non-judicial foreclosure, when the contract does not entitle it to do so." (Doc. # 44 at 10.) Another aspect of this theory is Defendant's deceiving of the "FHA into thinking it engages in loss mitigation as required by FHA regulations," which also requires Defendant to "solicit and receive applications for loss mitigation which requires deceiving consumers into believing they would be fairly evaluated so that homeowners like Plaintiffs will take the time and energy to send complex but useless applications to Defendant." (*Id.* at 11.) Finally, as part of this scheme, "Defendant had to deceive the trustee into believing it is entitled to foreclose for the trustee to act." (*Id.* at 10.)

The allegations recited in the above paragraph are insufficient "to ensure that a defendant is placed on notice of [its] alleged misconduct sufficient to prepare an appropriate defense." *Kansas Penn Gaming*, 656 F.3d at 1214.[7]

Further, the allegations of fraud advanced by Plaintiffs are normally subject to a heightened pleading requirement defined in Rule 9 of the Federal Rules of Civil Procedure which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Midgley v. Rayrock Mines, Inc.*, 374 F. Supp. 2d 1039, 1047 (D.N.M. 2005) (quoting *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252

---

[7] Further, the above-quoted allegations, which the Court has pulled from Plaintiffs' **Response** to the Motion to Dismiss, present what is only a marginally more coherent narrative of the more wide-ranging deceptive scheme alleged in the second amended complaint itself. In short, much more road-mapping must be done by Plaintiffs on this claim—in the operative pleading rather than in briefing—before they are entitled to discovery on it.

(10th Cir. 1997)). Because Plaintiffs do not meet the pleading standard outlined in *Iqbal* and pursuant to Rule 8, Plaintiffs cannot meet this heightened standard.[8]

This Court will permit Plaintiffs one last opportunity to cure this defect. If Plaintiffs wish to raise this claim again in another amended complaint, they must:

1. Identify the legal obligations that apply to Defendant and are relevant to this claim.

2. Point to specific statutory or regulatory provisions that give rise to these legal obligations and explain concretely exactly what Defendant must allegedly do to comply with those provisions.

3. Narrate the circumstances under which Defendant violated these legal obligations when administering Plaintiffs' loan (if applicable). This narration should include approximate dates, approximate locations, key actors, and sufficient additional context (i.e., exactly what was said, how it was a misrepresentation, etc.).[9]

4. Provide sufficient detail and factual support explaining how Defendant's misrepresentations are seemingly systemic or at least apply to large numbers of Coloradoans. This Court is particularly concerned about the dearth of factual support related to Plaintiffs' claims of Defendant's systemic violations.

---

[8] Plaintiffs rely on Judge Krieger's opinion in *Martinez et al. v. Nash Finch Company*, No. 11-cv-2092 (D. Colo. Aug. 13, 2012) (Doc. # 57), for the proposition that they need not provide more detail about the time, place, and contents of the false representation. Plaintiffs' reliance on *Martinez* is misplaced as the false representation at issue in that case—which involved a misleading advertisement that guaranteed a ten-percent discount that was in fact a ten-percent increase in the price of goods—was a much simpler scheme than the one suggested in Plaintiffs' briefing.

[9] As a concrete example of how Plaintiffs' claim in present form is too vague, consider the following statement in the Response to the Motion to Dismiss, where Plaintiffs argue that "Defendant is aware of the exact language used in the correspondence to trustees, in reporting to FHA, and in contacts with Courts and to borrowers." (Doc. # 42 at 12.) Plaintiffs should set forth the exact language used in the correspondence, rather than providing a vague allegation that Defendant already knows what this is about and is merely hiding the ball.

Until Plaintiffs advance a coherent and particularized theory of liability for this claim, it is difficult for this Court to fairly assess its validity. This claim is therefore dismissed without prejudice.[10]

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiffs' Motion for Reconsideration (Doc. # 35) is DENIED and Defendant's Motion to Dismiss (Doc. # 37) is GRANTED IN PART AND DENIED IN PART. It is

FURTHER ORDERED that Plaintiffs' CCPA claim is DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that Defendant's Motion to Dismiss the claim related to Colorado Revised Statute § 38-40-103 is DENIED. It is

FURTHER ORDERED that, should Plaintiffs wish to file an Amended Complaint with respect to the CCPA claim, an Amended Complaint shall be filed **no later than October 7, 2014.**

DATED: September __16__, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[10] Defendant raises a number of additional arguments that could plausibly call into question many aspects of the alleged deceptive practices discussed by Plaintiffs in their amended complaint and related briefing. The Court declines to address these arguments at this time: it is difficult to assess the validity of Defendant's arguments in light of the general incoherence of Plaintiffs' theory. Nevertheless, Plaintiffs should take account Defendants' arguments in considering to plead another amended claim under the CCPA.